MARY A. MANLEY v. THE DEBENTURES "B" LIQUIDATION COMPANY *et al.*

No. 12,092.   ( 68 Pac. 31.)

SYLLABUS BY THE COURT.

1. TAXATION— *Purchase Held to be a Payment.*   Where one has secured his obligation by the pledge of the note of another, secured by mortgage on real estate, he cannot, as against his creditor, decrease the value of such security by purchasing such real estate at a tax sale.  Such a purchase, as between such parties, will be held as a payment of the tax.

2. ——— *Equitable Estoppel.*   It is the duty of one so collaterally pledging a real-estate mortgage to preserve the value of such security, and the law will not permit him to decrease it to his own profit and to the detriment of the one holding the note thus collaterally secured.

3. ——— *Certificate Held by Third Party with Notice.*   One receiving from such debtor a tax-sale certificate, obtained under circumstances indicated above, as security for a debt owing to him from the tax-sale-certificate holder, with knowledge of all the facts, stands in no better position than the original tax purchaser, and equity will cancel and set aside such tax-sale certificate in the hands of such person, at the suit of one wronged by the issuance of the certificate.

4. JURISDICTION— *Parties to Action.*   One not made a party to an action is not bound by the judgment rendered therein nor can he claim advantages growing out thereof.

Error from Atchison district court; W. T. BLAND, judge.  Opinion filed March 8, 1902.  Modified.

*L. F. Bird*, for plaintiff in error.

*Jackson & Jackson*, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Up to March 18, 1893, and for some ten years prior thereto, the Kansas Trust and Banking Company, a Kansas corporation, was doing business in the city of Atchison. As a part of its business, it borrowed money from different persons, and issued to them its notes in the form of debentures, securing the same by a deposit of notes and mortgages on real estate with the First National Bank of Atchison, as trustee. Such real-estate mortgages and the notes which they secured were to be held by the trustee in trust to secure the payment of these debentures. There were two series of debentures—"A," bearing eight per cent. interest and secured by a given class of mortgages, and "B," bearing seven per cent. interest, secured by another class of mortgages. The questions involved in this case arise only from series "B," about $120,000 of which had been issued.

On March 18, 1893, the Kansas Trust and Banking Company, having failed to meet its obligations, went into the hands of a receiver, under whose administration it paid less than one per cent. on its obligations. Subsequently the United States circuit court appointed a special receiver to take charge of the securities which had been deposited as collateral to debentures "B," convert them by foreclosure into cash, and with the proceeds to pay the debentures thereby secured. For this purpose, he brought actions in foreclosure and obtained title to a large number of tracts of real estate. Subsequently to this a corporation was organized known as the Debentures "B'

Liquidation Company, which was the plaintiff in the amended petition in this action.  This company was organized for the purpose of handling the lands, title to which had been taken by the receiver as hereinbefore mentioned, and to it the receiver had conveyed them.

While the Kansas Trust and Banking Company was a going concern, one R. M. Manley was vice-president and general manager thereof.  He was the son and agent of Mary A. Manley, plaintiff in error in this action and the principal defendant below.  At the tax sale of 1891 several of the pieces of real estate on which mortgages had been given, and which were deposited with the trustee as security for debentures "B," as hereinbefore noted, were purchased by the Kansas Trust and Banking Company.  Certificates of sale were taken in the name of R. M. Manley, the money with which they were purchased being furnished by the banking company.  They were assigned in blank and were delivered to the Kansas Trust and Banking Company, and by it subsequently delivered to Mary A. Manley by her son, R. M. Manley, who was at the time acting as her agent, as well as general manager of the banking company.  The assignment of the tax-sale certificates, however, was not entered on the county treasurer's sale-book until August, 1894, and Mrs. Manley was not made a party to the foreclosure actions prosecuted in the interest of the holders of debentures "B," as hereinbefore noted.  The banking company was, at the time of the assignment, indebted to Mrs. Manley in a large amount, and the assignment was made for the purpose of securing her.   The purpose of this action was to cancel these tax-sale certificates and prevent Mrs. Manley from

obtaining title to the lands mentioned by means of tax deeds issued thereon.

After Mrs. Manley became the owner of these tax-sale certificates she paid the tax assessed on the lands for the year 1893. These taxes were not tendered to her before the action was brought. The plaintiff in the petition, however, offered to make payment of such sum as should be ascertained to be due her, it being alleged that the facts relative to such payment were not known. Many other details are presented and elaborately argued in the briefs, but we do not think them essential to the determination of this action. It seems to us that it requires the application of but a few simple considerations to determine the rights of the parties.

The Kansas Trust and Banking Company could not obtain any lien upon or title to the lands, mortgages upon which had been deposited with the trustee to secure its debentures, which would in any manner operate to depreciate the value of such securities. It would not be permitted to depreciate in any manner the value of the securities which it had pledged as collateral to its own debts. The court found that there was an agreement with the debenture-holders that these mortgages should be maintained as first liens. We do not care, however, to place our conclusion upon that finding, but declare the law to be that where one has given, as security to his own debt, a mortgage given by another on property, such one can acquire no title to, or lien upon, such property so as to depreciate its value as such security. So that, in this action, when the Kansas Trust and Banking Company purchased these tax-sale certificates, it amounted in law to a payment of the taxes thereon; at least, as between the debenture-holders and the Kansas Trust

and Banking Company, or its assigns, having knowledge of these facts. When these tax-sale certificates were passed to Mrs. Manley, she took no greater right in and to them than the banking company had. Her son, as her agent, who was at the same time the general manager of the company, transacted this business for her, so that she was charged with full knowledge of all these facts.

It is suggested that, inasmuch as the mortgages had been foreclosed and title to the lands transferred to the Debentures "B" Liquidation Company, it would not have the rights that the debenture-holders might have had. This claim does not receive our approval. The Debentures "B" Liquidation Company was but another name for the debenture-holders; it was organized in and operated to promote the interests of such holders. To cut off the title to the lands by these tax-sale certificates or deeds issued thereon would be as damaging to them as would have been a like operation before the foreclosure of the mortgages. While the mortgages, as mortgages, might have been "drowned"—to use the expression of the plaintiff in error—in the foreclosure proceedings and thus extinguished, still it must be remembered that it was the interest of the debenture-holders that the banking company was bound to protect, and not simply the mortgages which served as security for these debentures; and, besides this, these tax-sale certificates were taken at a time when the mortgages were in existence, and, as we have seen, the pretended purchase was in law but a payment of the tax. In law there never was a tax-sale certificate. What purported to be such was simply a tax receipt, as to these debenture-holders.

By the judgment rendered in the foreclosure cases,

37—64 KAN.

the proceeds of the sale of the lands were directed to be applied, first, to the payment of the costs of the action, and second, to the payment of the taxes and interest. It is therefore claimed by Mrs. Manley that, by reason of this judgment, she obtained the right to have these taxes paid to her. This claim we do not indorse, first, because, in the sale of none of these lands did the price which they brought suffice to pay the costs of the action, leaving nothing with which to pay taxes; and second, Mrs. Manley was not a party to that action and could obtain no rights under the judgment therein.

The defendant in error claims that inasmuch as the Kansas Trust and Banking Company, which appeared from the treasurer's records at the time of the commencement of this action to be the owner of these tax-sale certificates, was made a party, and its interest was cut off by the decree in such foreclosure, that decree effectually cut off the interest of Mrs. Manley, she not having given notice in the manner prescribed by statute of her ownership of the tax-sale certificates. We cannot approve of this claim, for, as she obtained no rights under the decree, as above indicated, she was not bound thereby; but, as we have before said, these tax-sale certificates were as innoxious and harmless in her hands as they were in the hands of the banking company. It therefore necessarily follows that the court was correct in decreeing their cancelation.

It is also claimed by plaintiff in error that as repayment of the taxes paid by Mrs. Manley in good faith after these tax-sale certificates came into her possession was not tendered before this action was commenced, it cannot be maintained. Of course, the rule is well established that he who seeks equity must

Manley v. Debentures Co.

first do equity ; but a tender of an amount due is not always required as a prerequisite to the maintenance of an action in such cases. Where the amount is in dispute, or is unknown by a plaintiff, or where a defendant denies all right to recover, an actual tender need not be made. In this case the plaintiff expressed its willingness to pay such sum on this account as the court should find due to Mrs. Manley, and, we think, brought itself well within the equitable rule. The court, however, did not decree to her anything. In this we think the court was in error. These taxes were paid by Mrs. Manley, not by the banking company. The benefit of their payment inured directly to the parties interested in the lands. If Mrs. Manley had not paid them, those parties would have been compelled to. We think it would be inequitable to cancel these certificates without attaching the condition that these taxes should be refunded to her.

In this respect the decree of the court will be modified, and the case will be remanded for the purpose of enabling the court below to ascertain the amount of the taxes so paid by her, with interest at the rate of six per cent. per annum, and to require payment of such sum as a condition precedent to the relief granted.

The costs in this court will be divided.

SMITH, GREENE, JJ., concurring.