Cones v. Gibson.
GEORGE B. CONES V. CHARLES E. GIBSON.
No. 15,411.   (94 Pac. 998.)
SYLLABUS BY THE COURT.

TAX SALE—*Purchase of Certificate by Guarantor of Mortgagee—
Statute of Limitations—Lien for Taxes.*   The owner of a note
secured by a real-estate mortgage assigned both instruments,
and by contract written on the back of the note guaranteed
the payment of interest when due and payment of the prin-
cipal twelve months after maturity.   Before the statute of
limitations had run against the guaranty the guarantor pur-
chased the land at tax sale.   An assignee of the tax-sale cer-
tificate took a tax deed of the land, which, however, was void
on its face.   A suit was brought to foreclose the mortgage
after the statute had barred the remedy upon the guaranty.
*Held:* (1) The purchase of the land at tax sale by the guar-
antor did not effect a payment of the taxes as such a pur-
chase by the mortgagor would have done.   The guarantor and
his assignee were under no obligation to the state, to the
mortgagor or to the holder of the mortgage to pay the taxes
on the land, and consequently had the right to take a tax
title thereto, at least as against all the world except the
holder of the mortgage; and the holder of the mortgage could
object no further than might be necessary to protect his lien.
(2) The tax-deed holder, being an assignee of the guarantor
and in privity with him, could plead the statute of limita-
tions against the guaranty.   (3) The remedy on the guaranty
being barred by the statute of limitations, the guaranty was
no longer a factor in the relations of the parties and the tax-
deed holder was entitled to a first lien on the land.

Error from Lane district court; CHARLES E. LOB-
DELL, judge.   Opinion filed March 7, 1908.   Reversed.

*J. S. Simmons,* for plaintiff in error.

*W. H. Russell,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.:  The Showalter Mortgage Company, be-
ing the owner of a note secured by a real-estate mort-
gage, assigned both instruments to Charles E. Gibson.
By written contract indorsed on the note it guaranteed

payment of the interest when due and payment of the principal twelve months after maturity. While the guaranty was in force the mortgage company purchased the land described in the mortgage at a tax sale and received a tax-sale certificate therefor. Afterward an assignee of the certificate received a tax deed of the land, and by quitclaim conveyances the title thus acquired became vested in George B. Cones.

Gibson brought a suit to foreclose the mortgage. Cones answered setting up title under the tax deed, and prayed for a lien for taxes in case it should be held to be void. Gibson replied pointing out defects in the tax deed rendering it void on its face, and defended against the claimed lien for taxes by pleading the guaranty of the mortgage company. Cones demurred to the latter portion of the reply, on the ground that the statute of limitations had run against the enforcement of the guaranty. The demurrer was overruled, judgment was rendered for the plaintiff, the tax deed was held to be void on its face, and Cones was denied any lien whatever. Of the ruling denying him a lien Cones complains.

Gibson claims that because Cones is the holder of an independent title to the land he is forbidden to plead the statute of limitations against recovery upon the mortgage, citing *Ordway v. Cowles,* 45 Kan. 447, 25 Pac. 862, and similar cases. The rule announced in those decisions has no application here. Cones does not invoke the statute on behalf of the maker of the note and mortgage, with whom he is not in privity, nor even against the note and mortgage. He is defending against a guaranty pleaded by way of assault on his tax title. He is an assignee of the guarantor, the Showalter Mortgage Company, is its successor in relationship to the land, and holds the same rights it possessed. He is therefore in privity with it (*Challis v. City of Atchison,* 45 Kan. 22, 25 Pac. 228) and can make the defense the same as it might have done. (25 Cyc. 1006.)

For all purposes of the decision the case is the same as if the Showalter Mortgage Company, the guarantor of the plaintiff's mortgage, had taken out the tax deed while the guaranty was in full force and were now claiming the land under the tax deed after liability on the guaranty had been extinguished by the statute of limitations.

Gibson argues that the purchase of the land by the mortgage company at tax sale did nothing more than effect a payment of the taxes; that the tax-sale certificate had no validity as such, and could be of no more consequence than a receipt for taxes paid; and hence that the tax deed conveyed no interest whatever in the land and carried with it no lien whatever upon the land. This argument is supported by the decisions in the cases of *Howard Invest. Co. v. Benton Land Co.,* 5 Kan. App. 716, 46 Pac. 989, and *Concordia Loan & Trust Co. v. Parrotte,* 62 Neb. 629, 87 N. W. 348. In the case of *Howard Invest. Co. v. Benton Land Co.* the guaranty was identical in terms with the one now in controversy. The material part of the opinion reads as follows:

"The mortgage in question contained a clause making it the duty of the mortgagor to pay the taxes upon the premises, but even if such a clause had not been inserted it would have been his duty so to do. When the Showalter Mortgage Company guaranteed the payment of the obligation of the mortgagor, it was equivalent to guaranteeing that his whole contract would be carried out; and by so doing it was placed in such a position of trust with relation to the defendant in error that the law will not permit it to obtain title by the failure upon the part of the mortgagor to pay the taxes upon the land mortgaged and the purchase of the land by it, at tax sale, on account of such default. The default of the mortgagor became the default of the company, and the purchase of the premises at tax sale was simply the payment of taxes by one whose duty it was to pay the same." (Page 717.)

The attempt here made to derive the disability of the guarantor to take a tax title from the duty to pay taxes manifestly distorts the terms of the guaranty.

The guarantor entered into no contract with any one to pay taxes on the mortgaged land. He limited the indemnity he should provide to payment of interest and principal, and nothing else can be added to his legal obligation. His undertaking was not commensurate with that of the mortgagor, who may have agreed to keep buildings insured, to protect the premises from waste, and to perform other collateral engagements, but it was a separate and independent covenant of his own, the extent of which should be measured by its own terms. He rested under no legal duty to the state, to the mortgagor or to the mortgagee to pay taxes on the mortgaged premises. He would have been guilty of no fault, legal or moral, if the mortgagor's title and the mortgagee's security had both been swept away by a tax deed to a stranger. The suggestion of a conscientious quality in the relation between the guarantor and the owner of the mortgage which would prohibit the guarantor from destroying the security of the mortgage has some force, but the default of the mortgagor to pay taxes was not the default of the guarantor, and no inhibition upon the guarantor's taking out a valid tax deed of the land could be erected upon that foundation.

In the case of *Concordia Loan & Trust Co. v. Parrotte*, 62 Neb. 629, 87 N. W. 348, it was held that a person who guarantees the payment of a note and mortgage cannot, as against the owner of the note and mortgage, obtain a lien upon the mortgaged real estate by purchase at tax sale, mortgagor and guarantor being placed upon the same footing in that respect. While the decision proceeds upon two grounds, one of them involves the broad doctrine stated. The opinion (p. 632) quotes from Cooley on Taxation, and then proceeds, as appears by the following extracts:

" 'Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers on grounds which are apparent when their relation to the tax and to the property is shown. The title to be given

Cones v. Gibson.

on a tax sale is a title based on the default of a person
who owes to the public the duty to pay the tax, and the
sale is made by way of enforcing that duty. But one
person may owe the duty to the public, and another
may owe it to the owner of the land by reason of con-
tract or other relations. Such a case may exist where
the land is occupied by a tenant who, by his lease, has
obligated himself to pay taxes. Where this is the re-
lation of the parties to the land, it would cause a shock
to the moral sense if the law were to permit this tenant
to neglect his duty and then take advantage thereof to
cut off his lessor's title by buying in the land at a tax
sale. So the mortgagor, remaining in possession of the
land, owes to the mortgagee a duty to keep down the
taxes; and the law would justly be chargeable with con-
nivance at fraud and dishonesty if a mortgagor might
be suffered to permit the taxes to become delinquent
and then discharge them by a purchase which would
at the same time extinguish his mortgage. There is a
general principle applicable to such cases which may
be stated thus: That a purchase made by one whose
duty it was to pay the taxes shall operate as payment
only; he shall acquire no rights as against a third party
by a neglect of the duty which he owed to such party.
This principle is universal, and is so entirely reason-
able and just as scarcely to need the support of au-
thority. Show the existence of the duty, and the dis-
qualification is made out in every instance.' [2 Cooley,
Tax., 3d ed., 963.] The duty to pay the debt is an ob-
ligation upon the guarantor equally with the maker, in
the event the latter does not pay. It seems, therefore,
that the guarantor ought, equitably, to be under the
same disability with the maker in the matter of injuring
the means of payment. It would be as great a con-
nivance at fraud and dishonesty in law to suffer the
guarantor to pay the taxes on the property covered by
the mortgage and give him a priority over the security
as it would be to allow the maker to do those things.
It is fully as equitable to prevent this wrong to the
secured when done by the guarantor as when done by
the maker, and that can be accomplished by placing
both under the same disability."

It is somewhat difficult to understand what bearing
the quotation has upon the discussion and conclusion
following it. The text cited bases the disability to take

a tax title upon the relation of the tax purchaser to the land or to the tax—that is, upon the duty to pay taxes, the argument being: show a duty to discharge taxes and a disqualification to build up a tax title is established. It must be clear that a contract guaranteeing the payment of principal and interest only cannot be stretched to make the payment of any other sums a legal duty. The guarantor is under no obligation to augment the burden of his contract by the expenditure of money to preserve the mortgage lien from annihilation by a tax deed. He need take no affirmative step to forestall such a result, and if he omit or decline to pay taxes on the land he is guilty of no fault, moral or legal. He can stand upon the terms of his guarantyship. Aside from his contract, the guarantor is a stranger both to the land and to the tax. He owes the state no duty to pay the mortgagor's taxes, and most certainly he owes the mortgagor no such duty. If, therefore, a tax sale of the land should occur it would take place through no fault of his, and if he should take a title based upon such sale he would be building no rights upon a neglect or breach of duty to pay taxes.

There being no legal duty resting upon the guarantor to keep the mortgagee's security intact by paying taxes on the land, the only valid ground of the decisions referred to is that the contract of guaranty creates a relation between the guarantor and the holder of the debt guaranteed which renders it inequitable for the guarantor to acquire a tax title to the land pledged as security for the debt. There may be some difficulty in demonstrating the soundness of this view. Clearly the offense does not lie in suffering the tax sale to occur, because the guarantor owes nobody the duty to prevent it. If upon a sale the land should, without collusion, be bid in by a stranger, the guarantor would be guilty of no fault. The mortgagee's resources for the satisfaction of his debt would be diminished by the value of the land, but no blame could attach to the guarantor.

Now, if after the mortgagee has suffered this loss the guarantor should, in good faith, buy the tax-sale certificate, what legal duty would he violate? What breach of good faith or good morals would he commit? And if he may take an assignment of the tax-sale certificate why may he not bid at the sale? The mortgagee, not being under any obligation to pay taxes, is guilty of no fault if the land go to tax sale. He may buy at the tax sale, cut off the title of his mortgagor and throw the entire burden of providing security for the debt upon the guarantor with perfect impunity, simply because he owes no duty to anybody to pay the taxes, and, consequently, in taking the tax title takes advantage of no default of his own. It is not even presumed that he purchases to protect his mortgage lien. (*Waterson v. Devoe,* 18 Kan. 223; *McLaughlin v. Acom,* 58 Kan. 514, 50 Pac. 441.) Why should that be reprehensible in the guarantor which is entirely virtuous in the mortgagee, when both occupy precisely the same relation to the tax and neither is under any contract duty to the other respecting it?

It is not necessary to a decision of this case that these questions be answered. The court expresses no opinion upon them, but assumes that it might be wrong to the mortgagee to permit the guarantor to take a tax title to the real estate in controversy. The question then arises, Ought the guarantor to be put on the same footing with the mortgagor in that respect, as the Nebraska court and the Kansas court of appeals both held? The prohibition upon the guarantor ought to extend no further than is necessary to accomplish justice, and if the guarantor can be protected from loss without injury to others that ought to be done. The great jurist who wrote the text quoted above recognized the rightfulness of tax titles voidable only at the instance of parties who would be injured, and then only to the extent necessary for their protection. (2 Cooley, Tax., 3d ed., 971.) Besides this, in deciding a case in-

volving questions relating to the protection of a mortgage lien from a tax lien he wrote the following:

"Sometimes a party by the force of circumstances is placed in a position where another may take the profit of his losses without being under obligation to make return; but the adjustment of legal rights on equitable principles is never meant to work such a result." (*Connecticut Mut. L. Ins. Co. v. Bulte,* 45 Mich. 113, 123, 7 N. W. 707.)

If the mortgagor should pay his debt in full no principle of law or equity makes it necessary that he have his land free of the taxes which the guarantor and his successors in interest have paid. If the land should sell for enough at foreclosure sale to reimburse those who have paid the taxes as well as the mortgagee it would be grossly unjust to return the surplus above the mortgage indebtedness to the landowner and thus permit him to escape the payment of his taxes. If the guarantor should at any time be obliged to protect against a conveyance of the land for taxes, the landowner ought not to reap a profit from his own neglect of duty to the state and to the mortgagee and from the hardship of the guarantor, who has been obliged to discharge that duty for him. If the guarantor pay taxes outright or redeem from a tax sale he has no remedy. His outlay cannot be recovered. Therefore justice demands that, as against the landowner, the guarantor shall be allowed to bid at the tax sale, or if another holds the certificate of sale to take an assignment of it. In due time he must then take out a tax deed or lose his lien, and if the landowner should continue in default, and should neglect or refuse to redeem, the tax deed should have the same effect against him as in other cases. Looked at from the side of the mortgagee, justice requires no more than that the rights of the guarantor be subordinated to his own. It is unconscionable for him to demand that the guarantor shall lose entirely the money advanced to protect his mortgage which he could have added to his lien if he had

paid it. Therefore the only just rule is that the guar-
antor may take a tax title to the land good against all
the world except the mortgagee, and that such a title
shall be impeachable by the mortgagee only so far as
may be necessary to protect his rights.

This court is already virtually committed to this
doctrine. In the case of *Manley v. Debentures Co.*,
64 Kan. 573, 68 Pac. 31, the Kansas Trust and Bank-
ing Company had borrowed money upon its debenture
bonds and had secured them by the deposit of real-
estate mortgages taken from third parties to itself.
The mortgages were foreclosed, the lands were bid in
and title was taken in a "Debentures Liquidation Com-
pany," to be disposed of for the benefit of the bond-
holders. Certain tax certificates upon the lands were
taken out with money furnished for the purpose by
the banking company and for its benefit. These cer-
tificates were assigned to Mary A. Manley, as security
for an indebtedness of the banking company to her.
With affairs in this situation; the debentures company
occupying in legal effect the position of the bond-
holders, and Mary A. Manley holding no rights su-
perior to those of her assignor, it was held the tax
certificates should be canceled. In the opinion it was
said:

"Where one has given, as security to his own debt, a
mortgage given by another on property, such one can
acquire no title to, or lien upon, such property so *as to
depreciate its value as such security.* So that, in this
action, when the Kansas Trust and Banking Company
purchased these tax-sale certificates, it amounted in
law to a payment of the taxes thereon; *at least, as
between the debenture-holders and the Kansas Trust
and Banking Company, or its assigns, having knowl-
edge of these facts.*" (Page 576.)

The carefully guarded limitations placed upon the
scope of the decision are here italicized for emphasis.

The banking company occupied very nearly the posi-
tion of a mortgagor. Although the mortgages were
given by third persons, the banking company used them

28—77 KAN.

to secure its own debt. It virtually pledged the real estate covered by the mortgages to the bondholders, and could not destroy the security of the pledge by acquiring an interest in the property adverse to the bondholders. If it had taken title to the land by tax deed, equity would have said the land was still pledged to secure the bondholders. The mortgages having been foreclosed, there was no way to preserve a lien for taxes in favor of the certificate holder and against the landowner, so that it was proper for the court to declare the taxes paid as to the bondholders and to cancel the certificates. But the court went no further than the rights of the bondholders demanded, and left the way open to protect certificate holders against landowners upon whom rests the duty to pay taxes if opportunity should arise in other cases.

In view of the foregoing it must be held that the purchase of the land in controversy by the mortgage company at the tax sale did not constitute a payment of taxes the same as if the mortgagor had taken out the certificate of sale. The tax certificate carried with it a lien for taxes and the right to a tax deed. If the tax deed had been valid it would have conferred title good against all persons except the mortgagee. Being invalid, it entitles the holder to a lien for taxes superior to all interests except those of the mortgagee. By lapse of time and inaction on the part of the mortgagee he has lost the right to interpose the only fact which would subordinate the tax lien to his own. The remedy on the guaranty being barred by the statute of limitations, the guaranty is no longer a factor in the relations of the parties. In this suit it has no more legal effect upon the rights of the parties than would be the case if no guaranty had been given, and the tax-title holder has all the rights which a stranger to the mortgage debt would have.

The judgment of the district court is reversed and the cause is remanded, with instructions to proceed further according to the views herein expressed.