CONCORDIA LOAN & TRUST COMPANY, APPELLANT, V. ESTHER M. PARROTTE, APPELLEE.

FILED OCTOBER 1, 1901.   No. 10,039.

Commissioner's opinion, Department No. 1.

1. **Guarantor: PURCHASE AT TAX-SALE.** One who guarantees the payment of a note and mortgage can not obtain a lien upon the premises, as against the holder of the note and mortgage, by purchasing the real estate at tax-sale.

2. **Tax-Sale Certificates: AGENT TRUSTEE.** Where a corporation pays for its tax-sale certificates and tax receipts, but takes the title in the name of its agent, the latter is a mere trustee of that property for the former.

3. **Indorser: GUARANTOR BY AGREEMENT: PURCHASE AT TAX-SALE.** An indorser of a note, who also by an agreement became guarantor and collector of the principal sum and interest, and who had held out that it paid taxes to protect its guaranty and the interest of its patrons, can not, as against the secured, build up a superior lien upon the property given to secure the debt by buying in the property at tax-sale.

APPEAL from the district court for Douglas county. Heard below before KEYSOR, J. *Affirmed.*

*H. W. Pennock* and *A. B. Coffroth,* for appellant.

*William A. DeBord, contra.*

DAY, C.

In August, 1887, Johanna Schutt and husband executed a bond in the sum of $2,200 to the Lombard Investment Company, secured by a mortgage upon certain real estate situated in the city of Omaha. A few days thereafter the bond and mortgage were duly assigned to William Holloway, the bond having an indorsement thereon by which the mortgagee agreed as follows: "First—To guarantee the payment of the coupons, attached hereto, at the maturity thereof; second, to collect at its own expense and to pay over the principal hereof at maturity, provided the same is paid by the makers; third, in the event of default being made

by the makers, to collect at its own expense and to pay over the principal hereof, within two years from the maturity of the same and to pay interest thereon at the rate of six per cent. per annum, payable semi-annually until the principal is paid." Holloway assigned the bond and mortgage as collateral security to the Union National Bank of Philadelphia. The mortgagor failing to pay the taxes and assessments levied against the real estate, it was, on January 7, 1892, sold for delinquent taxes to the mortgagee, and afterwards other delinquent taxes and assessments were paid by the mortgagee, which for purposes of its own took the certificates of sale and tax receipts in the name of the Concordia Loan & Trust Company.

It was conceded upon the argument that the Concordia Loan & Trust Company had no greater rights in the premises and was subject to the same disabilities as the Lombard Investment Company. The mortgagor also failed to pay the interest upon the loan and the mortgagee paid the overdue interest coupons and had the coupons put in the name of the Investors Company, which latter company brought a foreclosure suit thereon. In that suit Holloway and the Union National Bank were made parties defendant, but the mortgagee and the Concordia Loan & Trust Company were not made parties. In that foreclosure suit the premises were sold to Holloway, who thereafter sold and conveyed them to Esther M. Parrotte, one of the appellees. This suit was brought by the Concordia Loan & Trust Company in the district court of Douglas county to foreclose the tax lien upon the premises acquired in the manner above mentioned, and prayed to have the tax liens declared a first lien upon the premises. The court found appellant's lien to be a second lien upon the premises, and that the interest and estate of appellee was a first claim thereon, and that she was the legal owner of the premises at the time of the commencement of the suit. From this judgment appellant brings the case to this court on appeal.

The question to be determined is the priority of these

incumbrances.  The evidence established that appellant was a Kansas corporation, organized and managed by the Lombard Investment Company for the purpose of holding and managing tax certificates and tax titles upon lands upon which the latter company held mortgages, and was the agency through which the Lombard Company carried on its tax business.  In short, the appellant was a department of the business of the Lombard Investment Company.  The Lombard Investment Company has long been insolvent and was at the time of the commencement of this suit.  The appellant holds merely the legal title to the certificate and tax receipts in trust for the Lombard Investment Company, and its rights in this action are, therefore, the same as the Lombard Investment Company.  The evidence also disclosed that the Lombard Investment Company had branch offices in many of the larger eastern cities, and that it issued and circulated pamphlets in which it gave a statement of the manner of conducting its business, and that these pamphlets were distributed among persons known to be investors and to persons who had invested in the securities handled by that company.  In one of the pamphlets the following language is used: "When the loans reach our eastern offices, they are registered and are ready for sale at par, and accrued interest, and when sold the care we take of them has only begun, for we look after every detail connected with every loan until the same is paid off; we see that the taxes are paid each year, and if not paid by the borrower, we pay them ourselves in order to protect ourselves, as well as the investor, who is saved all trouble and annoyance.  *  *  *  Great care is exercised in protecting the loans from unpaid taxes."  The Lombard Investment Company indorsed the bond and guaranteed the payment of the interest and the collection of the principal at its own expense, within two years after maturity.

A mortgagor has never been permitted to imperil his mortgage by allowing his taxes to become delinquent, buy-

ing them in and foreclosing for the purpose of extinguishing the mortgage. Cooley, in his valuable work on Taxation, page 500, says: "Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers on grounds which are apparent when their relation to the tax and to the property is shown. * * * So the mortgagor, remaining in possession of the land, owes to the mortgagee a duty to keep down the taxes; and the law would justly be chargeable with connivance at fraud and dishonesty, if a mortgagor might be suffered to permit the taxes to become delinquent, and then discharge them by a purchase which would at the same time extinguish his mortgage. There is a general principle applicable to such cases which may be stated thus: That a purchase made by one whose duty it was to pay the taxes shall operate as payment only; he shall acquire no rights as against a third party, by a neglect of the duty which he owed to such party. This principle is universal, and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance." The duty to pay the debt is an obligation upon the guarantor equally with the maker, in the event the latter does not pay. It seems, therefore, that the guarantor ought, equitably, to be under the same disability with the maker in the matter of injuring the means of payment. It would be as great a connivance at fraud and dishonesty in law to suffer the guarantor to pay the taxes on the property covered by the mortgage and given him a priority over the security, as it would be to allow the maker to do those things. It is fully as equitable to prevent this wrong to the secured when done by the guarantor as when done by the maker, and that can be accomplished by placing both under the same disability.

We think a fair inference to be drawn from the testimony is that the Lombard Investment Company was to look after the payment of the taxes, to protect its patrons and its guaranty, and having done so, equity will not per-

mit that it build up a hostile and paramount lien upon the security which is given for the debt. The same question presented here was before the court of appeals of Kansas, in *Howard Investment Co. v. Benton Land Co.*, 46 Pac. Rep. [Kan.], 989, wherein it was said: "One who guarantees the payment of 'a. note and mortgage can not obtain a lien upon the mortgaged premises, as against the holder of the note and mortgage, by purchasing the real estate at tax sale." The Lombard Company had agreed to look after the collection of the principal and to pay it over to the owner of the bond within two years after maturity, and represented to its patrons that it looked after the payment of taxes to protect its guarantee. It was not carrying out that agreement in good faith when it not only permitted the taxes to become delinquent but brought them in and endeavored to set them up as superior to the claim it had guaranteed and undertaken to collect. It will not now be permitted to contend in a court of equity that it owed no duty in reference to the payment of delinquent taxes, but was at perfect liberty to buy in such taxes and put them ahead of the claim it was collecting. The rule of good faith between persons standing in a fiduciary relation forbids such conduct. We therefore conclude that where a corporation pays for its tax-sale certificates and tax receipts, but takes the title in the name of its agent, the latter is a mere trustee of that property for the former. The guarantor of a note secured by a mortgage can do no act to the detriment of the security which the mortgagor could not do. As the Lombard Investment Company would not be permitted to place this lien for taxes in advance of the estate of appellee in the property involved, it follows that appellant will not be permitted to do so.

It is therefore recommended that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.

SULLIVAN, J., absent, not voting.