[No. 5289.]

[No. 2922 C. A.]

BARLOW ET AL. v. HITZLER, ADMR., ETC., ET AL.

1. **Practice in Civil Actions — Abatement by Death — Interest Transmitted to Representative—Bill of Revivor—Revival by Statute—Concurrent Remedies.**

Although Mills' Ann. Code, § 15, provides that, in case of the death or other disability of a party, if the cause of action survive, the court, on motion, may allow the action to be continued by or against his representative or successor in interest, still such action may be revived by a proceeding in the nature of a bill of revivor and supplement; and, where additional parties defendant are to be brought in, the latter is the better method of reviving the action and of presenting and determining the rights of all concerned.—P. 116.

2. **Same—Where Jurisdictional Defects Exist.**

In an action to have the foreclosure of a trust deed declared void for fraud, a complaint was filed and a summons issued, but the attempted service by publication was wholly insufficient to give jurisdiction of either the defendants or the property, and no appearance was entered by them. Held, that all subsequent proceedings by the court were void, and did not affect the pendency of the action or the rights of the plaintiff, but left the issues presented by the complaint undetermined and open. —P. 116.

3. **Same—Death of Plaintiff—Substitution Not Made Within a Year.**

An action to have the foreclosure of a trust deed set aside for fraud is not discontinued by the death of the plaintiff and the failure to renew it in the name of his representative for more than one year after his death, since Mills' Ann. Code, § 15, fixes no particular time within which a motion for substitution shall be made.—P. 117.

4. **Limitation of Actions—Relief on Ground of Fraud—Discovery of Fraud—Statutory Construction.**

Section 2911, Mills' Ann. Stats., providing that bills for relief on the ground of fraud shall be filed within three years after the discovery thereof, does not apply to an action to have the foreclosure of a trust deed set aside for fraud.—P. 117.

5. **Practice in Civil Actions—Estates of Decedents—Limitation of Actions—Statutory Construction.**

Sections 2916, 2917, Mills' Ann. Stats., extending the time for bringing actions in favor of executors and administrators upon

the happening of certain contingencies, does not apply to an action brought by decedent in his lifetime which was not abated or discontinued by his death or for any other reason enumerated in such sections.—P. 117.

6. Mortgages—Deeds of Trust—Release Without Authority—Effect.

Where a recorded trust deed was foreclosed by the trustee, and a release deed executed and recorded without authority from the cestui que trust or without payment of the debt secured thereby, the attempted release is invalid; and the person acquiring title to the premises through a subsequent trust deed had record notice of the trustee's limitation of power and the consequent invalidity of the foreclosure and release, and therefore was not an innocent purchaser, but took the premises subject to the rights of the cestui que trust of the first trust deed.—P. 117.

7. Taxes and Taxation—Party in Possession Under Illegal Sale —Acquisition of Tax Deeds—Effect.

Where a party is in possession of premises under an illegal foreclosure of a tax deed, claiming title thereto and receiving rents and profits therefrom, it becomes her duty to pay the taxes, and, by failing so to do and permitting the premises to be sold therefor, she cannot acquire title adverse to the legal title held by her in trust by purchasing, either directly or indirectly, the tax deeds arising from such sale.—P. 118.

8. Practice in Civil Actions—Mortgages—Foreclosure—Setting Aside—Reimbursement for Expenditures.

In an action to have the foreclosure of a trust deed declared void for fraud, where it is shown that the party claiming title derived it through a second trust deed and has been in possession of the property and has received from the rents and profits more than she has expended in payment of taxes and for the care and preservation of the property, she is not entitled to receive further reimbursements for the moneys so expended.—P. 118.

9. Same—Reference—Grounds—Statutory Construction — Questions Referred.

In an action to have the foreclosure of a trust deed declared void, where defendant had held possession by virtue of a sale under a second trust deed, the court properly ordered a reference to ascertain the amount defendant had expended for taxes and care of the premises and the amounts derived from rents and profits, in accordance with § 204, Mills' Ann. Code, providing for a reference when the point at issue requires the examination of a long account or when the taking of an account is necessary for the information of the court.—P. 118.

*Error to the District Court of Montrose County.*
*Hon. Theron Stevens, Judge.*

Action by Samuel Turbutt against Geo. L. Jacobson, John S. Mooney, Mary Mooney, Henry J. Aldrich and William H. Whitehead, and after the death of plaintiff, a complaint in the nature of a bill of revivor and supplement was filed, and Lavinia F. Barlow was added as a party defendant, and Alexander C. Hitzler, as administrator with the will annexed of the estate of Samuel Turbutt, was substituted as plaintiff. From a judgment for plaintiff, defendants, Lavinia F. Barlow and William H. Whitehead, bring error. ·                *Affirmed.*

Messrs. Bell & Catlin, for plaintiffs in error.

Messrs. Story & Story, for defendant in error.

On October 1, 1891, George L. Jacobson and John S. Mooney executed and delivered to Henry J. Aldrich, as trustee for the benefit of the Colorado Securities Company, a deed of trust on certain property in Montrose county to secure the payment of their promissory note for the principal sum of $1,300, due and payable October 1, 1896, and ten coupon notes of $52 each. On the 1st day of December, 1891, said notes and trust deed were assigned to Samuel Turbutt of Baltimore, Md. Four of the coupon notes were duly paid. On March 20, 1896, the remaining six and the principal note were owned and held by Turbutt. In January, 1893, while Turbutt was the owner of the notes, and without any default in the payment of the principal or the remaining coupon notes, and without any request to foreclose from Turbutt, Aldrich, the trustee, pretended to foreclose the deed of trust, and executed and delivered a release deed of the premises to Mary Mooney, the mother of John Mooney, for the nominal

consideration of $25. This release deed was recorded in the office of the county clerk of Montrose county on November 24, 1893. In May, 1893, John S. and Mary Mooney executed a second trust deed conveying the premises to Aldrich, as trustee, to secure the payment of their note for $1,200, and certain coupon notes attached, in favor of the Colorado Securities Company. The last mentioned notes were subsequently sold and assigned by the securities company to Lavinia F. Barlow. Afterwards, Aldrich resigned as trustee, and William H. Whitehead was appointed by Lavinia F. Barlow as successor in trust under the latter trust deed. Under the power thus conferred, Whitehead foreclosed the second trust deed, and sold the property to Barlow.

On March 20, 1896, Turbutt commenced this action in the district court of Montrose county against George L. Jacobson, John S. Mooney, Mary Mooney, Henry J. Aldrich and Willam H. Whitehead. An amended complaint against the same parties was filed October 24, 1896, which set forth the foregoing facts, and averred that the pretended sale and foreclosure by Aldrich of the first mentioned trust deed and pretended sale thereunder to Mary Mooney were fraudulent, and by him fraudulently designed to cheat and defraud plaintiff; that the said Mary Mooney and William H. Whitehead had full knowledge of all said fraudulent acts and intent.

Summons was duly issued in the action, and the service of a summons was attempted to be made by publication. This attempted service was wholly insufficient to give the court any jurisdiction of the defendants or the property. No appearance was entered by either of the defendants. However, at the November, 1897, term of said court, plaintiff introduced evidence and obtained what is designated as a

decree, but which amounts to merely a finding of facts by the court, no final decree being rendered.

No further steps were taken in the action until December 11, 1899. In the meantime Turbutt had died, and on the last mentioned date Dennis Murto, as administrator to collect of his estate, filed a complaint in the nature of a bill of revivor and supplement. In this complaint the administrator set forth the original complaint as amended and the proceedings which had been had thereon, the fact that the plaintiff Turbutt had died, and his appointment as administrator to collect. It averred that the facts set forth in the original complaint as amended were true, and alleged that subsequent to the commencement of the action, Lavinia F. Barlow, pretending to be the owner of the note mentioned in the deed of trust executed by John and Mary Mooney to the defendant Aldrich as trustee, being of date May 27, 1893, attempted to appoint William H. Whitehead as successor in trust under an instrument purporting to be dated March 30, 1896, and not filed till May 22, 1896, and William H. Whitehead, claiming to be such trustee, had executed and delivered to the defendant Lavinia F. Barlow, a deed purporting to be a trustee's deed, bearing date May 20, 1896, purporting to convey the above described premises to her. Lavinia F. Barlow was added as a party defendant.

Upon the filing of this complaint, a new summons was issued, directed to all of the defendants, including Barlow, and service was duly made by publication. Whitehead and Barlow filed separate answers setting up substantially the same defenses. First, they alleged the termination of the suit by reason of the proceedings theretofore had, and the pretended decree theretofore rendered, and the removal of the case from the docket. They also pleaded the statute of limitations (Mills' Ann. Stats., § 2911).

Second, that the revival proceedings were not commenced till more than a year after Turbutt's death, and the appointment of the administrator; that the failure of service of the original summons was attributable to the negligence of plaintiff's attorney; that the action was ended by the taking of the former decree, and the removal of the case from the docket. Third, sets up Barlow's title under the release deed from Aldrich and the second deed of trust. The fourth and fifth defenses set up tax deeds for the property from the treasurer of Montrose county to themselves.

Barlow, in addition to setting up tax deeds, alleges the payment of certain subsequent taxes and an improvement on the land by the purchase of a water right in the Loutsenhizer ditch.

All the material allegations of the answers were traversed by replications, except that the defendant Barlow had been in possession of the premises, the execution of the tax deeds, and the payment of subsequent taxes. The court found the issues in favor of the plaintiff; that the plaintiff had a prior lien on the premises under the first deed of trust; that Barlow's trust deed constituted a second lien on the premises, giving her the right to redeem from the first; that Whitehead was acting as Barlow's agent in purchasing the tax titles standing in his name for her use; that neither Barlow nor Whitehead could obtain affirmative relief under their tax deeds, for the reason that, after being given an opportunity to plead them as cross-complaints, they have refused to do so; further, that Barlow, being in possession and collecting the rents, was legally bound to pay the taxes, and that the purchase of a tax title was merely a method of paying such taxes; further found that Barlow was entitled to reimbursement of all amounts

expended by her for taxes and in the preservation of the property, but that she must account for the rents, issues and profits derived from the premises while she was in possession of the same; that a referee should be appointed to take testimony and report at the next term of court.

An interlocutory decree was then entered giving Barlow a right to redeem from plaintiff's lien, and appointing a successor to Aldrich, and ordering a foreclosure in the event Barlow failed to redeem. The court also appointed a referee, providing further that the cause should stand subject to such further order and judgment as the court might make on the incoming of the report of the referee.

Evidence was submitted by both parties before the referee, who filed a report that the defendant Barlow was indebted to the plaintiff in the sum of $133.48, being the balance of rents and profits after deducting all proper disbursements.

On October 30, 1902, the court rendered its final decree modifying its finding of fact so as to require the defendant Barlow to account for the rents, issues and profits of the land only to the extent of the moneys claimed by her for the payment of taxes and other expenses in the care of the property, and requiring the trust deed to be foreclosed, and the property to be sold by the sheriff. From the report of the referee, the court further found that the amount received by Barlow from the rents greatly exceeded her disbursements; that she was therefore not entitled to further reimbursement for such expenditures. Final judgment was thereupon rendered in conformity with these findings, and for costs of the action.

Mr. Justice Goddard delivered the opinion of the court:

The procedure herein adopted is a well established English chancery remedy, and has been fully adopted in the courts of this country as an important part of their equity procedure.—Bates on Equity Procedure, vol. 2, § 635. "A suit in equity which is perfect in its institution may, by some event subsequent to the filing of the original bill, become either (1) defective, or (2) abated, or (3) both defective and abated."—*Ibid.*, § 633.

Although the statute may provide a summary method for reviving such suits, the right to resort to this remedy is not thereby taken away. The two remedies are concurrent.—18 Enc. Pl. & Pr. 1100, and cases cited.

The action was commenced by filing the original complaint and issuance of summons. The proceedings thereafter at the November term, 1897, were without jurisdiction, and consequently void. They did not affect the pendency of the action, or affect in any way the rights of the plaintiff, but left the issues presented by the complaint undetermined and open for future consideration. The death of Turbutt temporarily abated the suit, and while, under section 15 of the code, his representative might have been substituted and the action continued by him upon motion, yet, because of the matters occurring subsequent to the commencement of the action necessitating the bringing in of new parties defendant, the procedure adopted was the better method of reviving the action and of presenting and determining the rights of all concerned.

The contention of counsel for plaintiffs in error that the proceedings had at the 1897 term of the district court, the entering of the pretended decree

and the removal of the cause from the docket, terminated the suit, is without merit; even if a final decree had been formally entered it would have been absolutely void for want of jurisdiction and would neither "affect, impair nor create rights." It left the plaintiff in exactly the same position that he would have occupied if no proceedings had been taken subsequent to the filing of the complaint. Nor was the action discontinued by the death of Turbutt and the failure to take steps to renew it in the name of his representative for more than a year after his death. The code, section 15, fixes no particular time in which a motion for substitution shall be made. "After the substitution of the administrator as plaintiff, limitation could not be pleaded on account of time elapsed between the death of plaintiff and the substitution of the administrator."—*Cochrane v. Parker,* 12 Colo. App. 169; nor does the case come within the provisions of section 2911, Mills' Ann. Stats., *Murto v. Lemon,* 19 Colo. App. 314.

The case was brought by Turbutt in his lifetime, and was not abated nor discontinued by his death or for any other reason enumerated in sections 2916 and 2917, Mills' Ann. Stats., which extend the time for bringing actions in favor of executors and administrators upon the happening of certain contingencies. It is clear, therefore, that these sections are not applicable to the facts in this case. Under the doctrine laid down in several cases in this court and the court of appeals, an attempted release of a trust deed by the trustee without authority from the holder of the trust deed, or the payment of the debt secured thereby, is invalid.

The defendant Barlow had notice of this limitation of the power of Aldrich through the recorded deed of trust held by Turbutt. Therefore, she was not an innocent purchaser, but took whatever title

she acquired through the subsequent trust deed charged with notice of Turbutt's right, and subject thereto. At most, she became vested with the legal title to the premises, burdened with the trust imposed by his prior trust deed. She was in possession of the premises from May 20, 1896, claiming title thereto and receiving the rents and profits. Under these circumstances, it was her duty to pay the taxes, and she could not, by neglecting to pay the same and permitting the land to be sold, acquire directly, or through the agency of another, any title to the property adverse to the legal title that she so held in trust.—*Barrett v. Amerein*, 36 Cal. 322; *Bassett v. Welch*, 22 Wis. 175; *Lacey v. Davis*, 4 Mich. 140; *Jacks v. Dyer*, 31 Ark. 334; *Hunt v. Gaines*, 33 Ark. 267; *Burns v. Lewis*, 86 Ga. 591.

The court below properly held that the tax deeds were inadmissible, and defendant Barlow, having received from the rents, issues and profits from the land while in possession thereof an amount in excess of the money expended by her in payment of taxes and for the care and preservation of the property, was not entitled to receive further reimbursements for the money so expended. It was within the province of the trial court, under section 204 of the code, to order a reference to ascertain the amount that defendant Barlow had expended for these purposes, and the amount she had derived from the rents and profits while in possession.

Without noticing in detail further objections urged by counsel for plaintiffs in error, suffice it to say that upon a careful examination of the record we can perceive no reason why the findings and conclusion of the trial court should be disturbed. Its judgment, therefore, is affirmed.        *Affirmed.*

Chief Justice Steele and Mr. Justice Bailey concur.