CHARLES E. GIBSON, APPELLEE, v. JOHN G. SEXSON ET AL., APPELLANTS.

FILED OCTOBER 22, 1908.   No. 15,283.

1. Appeal: JUDGMENT: ESTOPPEL. Where the plaintiff in a foreclosure suit offers in his petition to pay the amount of a supposed tax lien on the property covered by his mortgage, and in the prayer of his petition prays the right to make such payment, and the court so decrees, he cannot complain of such decree, even though it appears from the evidence on the trial that he was under no legal obligation to make such payment.

2. Receivers: APPOINTMENT: NOTICE: HEARING. Where plaintiff in an application for the appointment of a receiver serves notice upon the parties interested that such application will be presented to the court or to a judge in vacation on a certain day and hour and at a designated place, the court or judge is without power,

except by stipulation or appearance of the parties, to hear such application at an earlier date than that specified in such notice.

3. ——: ——: COLLATERAL ATTACK. And where the record on its face shows that the court or judge acted on such application one day earlier than the date specified in such notice, and appointed a receiver as requested in said application, without any appearance or consent by the adverse party, such appointment is void, and the judgment of the court or judge making the same may be attacked collaterally.

4. Judgment: COLLATERAL ATTACK. Where the record of a case foreclosing a tax lien shows upon its face that the only service attempted to be made upon a defendant corporation was upon a stranger to such corporation, as receiver thereof, when no receiver had in fact ever been appointed for such corporation, a judgment rendered in such case against such corporation is void and may be attacked collaterally by such corporation or its assigns.

5. Tax Lien: FORECLOSURE: DECREE: CONCLUSIVENESS. In a foreclosure proceeding by H., the holder of a tax sale certificate, against the M. S. bank, mortgagee, and S., the owner of the land, it was alleged that "the defendant is or claims to be the owner of said real estate, that defendant M. S. bank and all of the defendants herein have or claim to have some right, title, lien or interest in said land, either by deed, judgment, mortgage or mechanic's lien, or otherwise, the exact nature and extent of which is to plaintiff unknown, but plaintiff avers that, if said defendants or any or either of them have any right, title, lien or interest in or against said real estate or any part thereof, the same is junior, inferior, and subject to the lien of the plaintiff herein set forth." The defendants all having made default, a decree of foreclosure was entered, in which it was adjudged that the M. S. bank "be foreclosed of all equity of redemption or other interest in said premises." In a subsequent action by an assignee of the M. S. bank to foreclose his mortgage, held, that the former decree cannot be pleaded by S. as a bar. *Lincoln Nat. Bank v. Virgin,* 36 Neb. 735.

6. Tax Sale: PURCHASE BY OWNER. A purchase of land at sheriff's sale in a suit foreclosing a tax lien made by one whose duty it was to pay the taxes operates as payment only. He can acquire no rights as against a third party by a neglect of the duty which he owed to such party. *Concordia Loan & Trust Co. v. Parrotte,* 62 Neb. 629; *Pitman v. Boner,* 81 Neb. 736.

APPEAL from the district court for Perkins county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*B. F. Hastings,* for appellants.

*H. M. Sinclair* and *C. A. Robinson, contra.*

FAWCETT, C.

This action was commenced to foreclose a mortgage for $700 executed and delivered by Aaron N. Clark and wife to the Mead's State Bank of York, Nebraska, dated November .1, 1899.    After the usual allegations by an assignee of a mortgage in a petition to foreclose, the petition further alleges that the mortgagor Clark conveyed the premises described in the mortgage by warranty deed to Sawyer and Walker subject to the mortgage; that Sawyer and Walker conveyed to A. J. Miller subject to the mortgage; that on the 5th day of November, 1892, Miller conveyed the lands to Eugene H. Hill by warranty deed subject to the mortgage and the taxes; that on January 20, 1894, the said Hill conveyed the premises to the defendant Sexson subject to all liens of record; that said Hill and said Sexson are brothers-in-law; that, with the design of having the lien created by said mortgage discharged and divested without payment of the mortgage, Hill and Sexson confederated, conspired and colluded together, and in pursuance of such conspiracy, and to accomplish said design, said Hill purchased a tax sale certificate on said land for the taxes of 1893, which taxes became due and delinquent while Hill was the owner of the land, and prior to his conveyance to Sexson; that Hill, in pursuance of such conspiracy, foreclosed the tax lien represented by such certificate, and became the purchaser of the land at the foreclosure sale, and two months later executed another deed to defendant Sexson for a consideration of $2; that during all of the time Hill .was proceeding with such foreclosure proceedings defendant Sexson was the owner and in possession of the land, and that the subsequent conveyance to him was without consideration, and that all of the acts of Hill and Sexson aforesaid

were done for the purposes aforesaid. Plaintiff further alleges that in the foreclosure proceedings so prosecuted by Hill, defendant Sexson and the Mead's State Bank were made defendants; that defendant Sexson, without the issuance of a summons, entered a personal appearance, but did not file any answer or make any defense to Hill's foreclosure proceeding. That the Mead's State Bank was not served with summons, nor by publication, neither did it make any appearance in said action; that summons for such bank was served upon one W. W. Wycoff, as receiver of said bank, but that said bank was a corporation, not then dissolved, and that said Wycoff was not then an officer, assignee, trustee, receiver, or person having charge of the assets or business of said corporation; that said Wycoff was not a party to said action, either as receiver or otherwise; that in said tax foreclosure proceedings plaintiff's mortgage was not, by the decree rendered therein, barred, nor was the right to adjudicate thereon put in issue by the pleadings filed in said action; that the taxes that went into and made up the tax liens which Hill attempted to foreclose were the taxes assessed and levied against the land while the defendant Sexson and his grantor, Hill, were the owners of said land, and that said tax liens were created by their own default and neglect of duty in not paying the same; that, by reason of the premises, defendant, Sexson is now estopped to assert that he or his grantor Hill, or either of them, are purchasers of said land in good faith without notice, and estopped to deny that plaintiff's mortgage is a valid lien on said lands. Plaintiff further alleges that he is ready and willing to pay said tax liens and redeem the incumbrance created thereby, and offers to do so. The prayer is that plaintiff be allowed to redeem said tax liens and the incumbrance created thereby, and that he have a foreclosure of his mortgage. For answer defendant sets out the foreclosure proceeding by said Hill, instituted on February 4, 1901, which shows that such foreclosure suit was based upon a tax sale certificate for the

unpaid taxes for the year 1893, the year during which Hill was the owner of the property, and prior to his first deed to defendant Sexson. The petition in the tax foreclosure suit, which was commenced in Perkins county, is set out in full in the answer, and shows the defendants in that action to have been John G. Sexson and Mead's State Bank. There is no allegation in that petition that the Mead's State Bank was a corporation; that it had gone out of business, or was insolvent, or that any recveiver had been appointed for such bank. The summons was issued to the sheriff of York county. He returned the same with the following indorsement thereon: "The State of Nebraska, York County, ss.: I hereby certify that on the 9th day of February, 1901, I served the within writ of summons on the within named Mead's State Bank by delivering to W. W. Wycoff, receiver of Mead's State Bank, a true and certified copy of this writ as required by law. W. L. Lancaster, Sheriff." The answer further alleges that at the time of such foreclosure suit Sexson was an unmarried man, and entered his voluntary appearance in said action in the following form: "Comes now John G. Sexson, defendant herein, and waives the issuance and service of summons in this action, voluntarily subjecting himself to the jurisdiction of the court herein." The answer further alleges that both defendants made default, and a decree was entered against them, in which it was decreed, among other things, "that the defendants be foreclosed of all equity of redemption or other interests in said premises." The only allegation in the petition in said tax foreclosure suit, as to the defendant, Mead's State Bank, or the mortgage in controversy here, is as follows: "(8) That the defendant John B. Sexson is or claims to be the owner of said real estate; that defendant Mead's State Bank and all of the defendants herein have or claim to have some right, title, lien or interest in said land, either by debt, judgment, mortgage or mechanic's lien, or otherwise, the exact nature and extent of which is to plaintiff unknown, but plaintiff avers that

if said defendants or any or either of them have any right, title, lien or interest in or against said real estate or any part thereof, the same is junior, inferior, and subject to the lien of the plaintiff herein set forth."

The answer then alleges the sale of the premises by the sheriff of Perkins county, the confirmation of the sale, the execution and delivery to Hill of the sheriff's deed, and adds a general denial. For reply the plaintiff denies that the pretended summons, or any summons, in said foreclosure suit was ever served upon Mead's State Bank, and alleges that the said Wycoff was not the receiver of said bank, and was not in possession of the estate or in charge of the business of said bank at the time of the pretended service of said pretended summons, and alleges that at that time the Mead's State Bank was a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska, and not dissolved; that the pretended service of said pretended summons upon said bank was and is void; denies each and every other allegation of new matter in the answer contained; and alleges that the facts set forth in the answer are not sufficient to constitute a defense to the action. Upon these issues the case proceeded to trial in the district court for Perkins county. The court entered a decree ordering plaintiff to pay the sum of $113.71 as the amount necessary to redeem from said tax lien, and giving plaintiff a foreclosure of his mortgage. From that part of the decree ordering plaintiff to pay the said sum of $113.71, plaintiff appeals; and, from that portion of the decree giving plaintiff a foreclosure of its mortgage, defendant appeals.

Plaintiff having alleged in his petition his willingness to pay the money necessary to redeem from said tax liens, and having therein prayed that he be allowed to make such redemption, his appeal from that portion of the court's decree is without merit, and must be decided adversely to him.

On the trial of the case, all of the files in the tax foreclosure suit referred to in the pleadings were received in

evidence. There was also received in evidence a transcript
showing the entire proceedings in the district court for
York county in the case wherein defendants claim the
said Wycoff was appointed receiver of the Mead's State
Bank, and it is strenuously insisted by defendants that
the proceedings in that case, as well as in the tax fore-
closure suit, show that the court in each case had juris-
diction of the parties and of the subject matter; in other
words, that in each case the proceedings are regular upon
their face, and, hence, neither case can be assailed col-
laterally. We are unable to see wherein the proceedings
in the receivership matter in York county are material in
this case. Defendants must stand or fall by what was
done or omitted to be done in the tax foreclosure suit. No
reference was made in the tax foreclosure suit to any in-
solvency of the Mead's State Bank, or to any receivership
for said bank, and the district court for Perkins county
could not take judicial notice of what had been done by
the district court for York county. The only reference in
the tax foreclosure suit to any receivership was in the
return of the sheriff of York county to the summons in
the tax foreclosure suit, in which he stated that he had
served the summons upon the Mead's State Bank by de-
livering a copy thereof to W. W. Wycoff, receiver of
Mead's State Bank. We do not think this was sufficient
to establish the fact that the bank was in the hands of a
receiver and that Mr. Wycoff was such receiver. But, be
that as it may, the evidence shows that Mr. Wycoff never
took possession of any of the assets of the bank; that, in
fact, he never did anything in the matter except to file his
bond as such receiver a little over three months after his
appointment. His own testimony in the record shows he
never performed a single act as such receiver. Moreover,
in the findings of the court in this case, which counsel for
defendants in his brief says is "a very full finding of the
facts from the evidence, to which we invite the attention
of the court," and to which he again refers in his reply

34

brief as a "very careful and complete statement of facts," we find that the notice of hearing on the application for the appointment of the receiver, which was served upon the cashier of the Mead's State Bank, advised the bank that such hearing would be had in the office of the clerk of the district court for York county at 10 o'clock A. M. on November 3, 1897; that the court subsequently appointed such receiver on November 2, 1897, which order was filed on that date. The transcript of the clerk of the district court for York county also shows that the order appointing the receiver was filed on November 2, 1897. In that state of the record, if the matter were material, we would be compelled to hold that, under the requirements of section 274 of the code, the appointment of Mr. Wycoff as receiver was void. The section of the code just referred to reads: "Every order appointing a receiver without the notice provided for herein shall be void, and every such order heretofore made, under which the appointee has not possessed himself of the property in question, shall be suspended until an order shall have been made, and the bonds executed and filed in accordance with the provisions of this chapter." The notice of the hearing of an application for the appointment of a receiver is by this statute made jurisdictional, and it requires neither argument nor citation of authorities to show that the notice must state the time and place where the hearing will be had, and that the hearing must be upon that date. If the court attempts to adjudicate the question at an earlier date than that specified in the notice, its action is wholly void. The facts above recited appearing upon the face of the record, the judgment in that case is subject to collateral attack. And, the record in the tax foreclosure suit not showing any proper service upon the Mead's State Bank, the judgment in that suit is also open to collateral attack.

In addition to what has been said, we think *Lincoln Nat. Bank v. Virgin,* 36 Neb. 735, settles the question that plaintiff's rights under his mortgage were not barred by

the decree in the tax foreclosure suit, even if there had been proper service upon Mead's State Bank. In the third paragraph of the syllabus in that case it is said: "In a foreclosure proceeding by N. against the M. bank, a subsequent mortgagee, and V., their common mortgagor, it was alleged that 'the M. bank claims some interest in the premises, the nature and extent of which is to the plaintiff unknown, but is subordinate to plaintiff's claim, wherefore plaintiff asks that defendant be compelled to set the same up or be forever barred.' The defendants all having made default, a decree of foreclosure was entered in which it was found that the M. bank had no right, title, or interest in the mortgaged property. In a subsequent action by the M. bank to foreclose its mortgage, *held,* that the former decree cannot be pleaded as a bar by V. or his grantees." The averments in the petition in that case and in the petition in the tax foreclosure case are practically identical, and the discussion by POST, J., on pages 739 and 740 is applicable to and decisive of this case. In any view of the case, therefore, plaintiffs' rights under the mortgage in suit, as against the defendant Sexson, were not barred.

Having held that the tax foreclosure suit prosecuted by Hill is subject to attack in this suit, what follows? The tax certificate upon which that suit was based was for the taxes unpaid and delinquent during the year 1893, while the duty rested upon Hill to pay the same. The subsequent taxes involved were taxes for the years while the defendant Sexson owned the property under a deed which conveyed the premises to him subject to the mortgage. Hence, they were taxes which it was his duty to pay. Furthermore, we think the evidence fully sustains the allegations in plaintiff's petition that this tax foreclosure proceeding was a device by the brothers-in-law, Hill and Sexson, to defeat plaintiff's mortgage: It is remarkable indeed that defendant Sexson would enter his voluntary appearance in a *bona fide* suit by Hill to foreclose a tax lien upon his, Sexson's, land, and then never

make any further appearance in the case, but allow his land to be sold for the paltry sum involved in such suit. It is also a significant circumstance that two months after Hill received his sheriff's deed he conveyed the land to his brother-in-law, Sexson, for a consideration of $2. In Jones, Mortgages (6th ed.), sec. 736, it is said: "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage of the land to secure it. * * * The difference between the purchaser's assuming the payment of the mortgage and buying subject to the mortgage is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability." In section 680 the same author says: "A mortgagor or his grantee cannot, by acquiring a tax title upon the land, defeat the lien of the mortgagee. It is his duty to pay the taxes, and he is not allowed to acquire a title through his own default. The same obligation rests upon one who has purchased the land of the mortgagor." In *Concordia Loan & Trust Co. v. Parrotte,* 62 Neb. 629, we quote from Cooley on Taxation, page 500, as follows: "The mortgagor, remaining in possession of the land, owes to the mortgagee a duty to keep down the taxes; and the law would justly be chargeable with connivance at fraud and dishonesty, if a mortgagor might be suffered to permit the taxes to become delinquent, and then discharge them by a purchase which would at the same time extinguish his mortgage. There is a general principle applicable to such cases which may be stated thus: That a purchase made by one whose duty it was to pay the taxes shall operate as payment only; he shall acquire no rights as against a third party, by a neglect of the duty which he owed to such party. This principle is universal, and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made

out in every instance." Under the above authorities, and many others which might be cited, and the facts in this case, it is clear that the duty to pay the taxes involved in the tax foreclosure suit rested upon Hill and the defendant Sexson, and, hence, Hill's alleged purchase in his tax foreclosure proceeding must be held to have been simply a payment of the taxes involved in that suit, and the deed which he received from the sheriff nothing more than a receipt for the same.

We recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.