[No. 11003.  Department Two.  July 8, 1913.]

ANGIE B. COLLINS *et al.*, *Respondents*, v. A. N. HOFFMAN *et al.*, *Appellants*.[1]

TAXATION—SALES—FRAUD—SETTING ASIDE DEED—DEFENSES. The statutory regularity of tax foreclosure proceedings is no defense to an action to set aside a tax judgment and deed fraudulently obtained by one whose duty it was to pay the tax.

APPEAL—DECISION—REMAND. The reversal of a case and remand for a new trial on account of error in excluding documentary evidence, which was in the record, is in effect a decision that the evidence was sufficient to support a finding for appellant.

TAXATION—FORECLOSURE SALE—FRAUD—SETTING ASIDE TAX TITLE. A tax foreclosure and sale is void where the certificate of delinquency was purchased by the secretary of a corporation while it was owner of the land, and transferred to a figurehead and foreclosed for his benefit in an action naming the corporation as owner, the secretary accepting service, without notice to or making a subsequent purchaser from the corporation a party or publishing the summons; since the purchase of the certificate by one in his position of trust was a violation of his duty and amounted to a payment of the tax.

COVENANTS—SPECIAL WARRANTY—EFFECT—TAX TITLE. A conveyance by special warranty deed warranting the title against acts done by the grantor, imposes the duty of paying the delinquent taxes accruing while the owner of the land, or at least of notifying the grantee of an outstanding certificate when served with summons in an action to foreclose the tax.

[1]Reported in 133 Pac. 450.

TAXATION—TAX TITLE—SETTING ASIDE—ACTIONS—EVIDENCE. Proof that an owner, since deceased, was not made a party to tax foreclosure proceedings and that no summons was published or any service made establishes *prima facie* that he had no actual notice of the suit.

SAME—FRAUD—DEFENSES—NEGLIGENCE OF OWNER. One charged with deliberate fraud in obtaining a tax title cannot defend on the ground of the owner's negligence in failing to defend the tax foreclosure.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered May 24, 1912, in favor of the plaintiffs, after a trial on the merits before the court, in an action to cancel a tax foreclosure deed and to quiet title. Affirmed.

*Kerr & McCord*, for appellants.

*Hughes, McMicken, Dovell & Ramsey, Otto B. Rupp*, and *J. B. Joujon-Roche*, for respondents.

ELLIS, J.—This is an action to vacate and set aside, upon the ground of fraud, the proceedings in foreclosure of a certificate of delinquency for unpaid taxes upon certain land in Chehalis county. It is here for the second time on appeal. The undisputed facts are as follows: On February 13, 1900, the certificate of delinquency was issued to one Robert Lytle. At and for long prior to that time and until May 3, 1901, the land covered by the certificate was owned by the Fidelity Trust Company, a corporation, of which the defendant Gleason was secretary and manager. On June 18, 1900, the certificate was assigned by Lytle to the defendant Hoffman, who was cashier of the American Savings Bank and Trust Company, of which the defendant Gleason was also manager. On May 3, 1901, the Fidelity Trust Company conveyed the property covered by the certificate to John Collins. On August 6, 1902, the defendant Hoffman instituted foreclosure proceedings upon the certificate of delinquency. The Fidelity Trust Company and all persons unknown, if any, having or claiming an interest in the land, were made defend-

ants. No summons was ever published. On August 7, 1902, the defendant Gleason accepted service of summons in that action on behalf of Fidelity Trust Company as its secretary. The Fidelity Trust Company made default, and on October 17, 1902, a judgment foreclosing the tax certificate was entered. At a public sale pursuant to that judgment, the property was bid in by the defendant Hoffman, to whom the treasurer of Chehalis county executed a tax deed on November 13, 1902. John Collins died testate in April, 1903. On September 29, 1903, the plaintiffs Angie B. Collins, John Francis Collins and R. L. Hodgdon, as executors and trustees under the will of John Collins, deceased, and Angie B. Collins in her own right as widow of John Collins, deceased, commenced this action.

The allegations of the complaint are sufficiently set forth in our opinion on the former appeal, to which reference is made. *Collins v. Hoffman*, 62 Wash. 278, 113 Pac. 625, Ann. Cas. 1913 A. 1. The relief sought was a vacation of the foreclosure proceedings, the cancellation of the tax deed, and the entry of a decree removing the cloud created by those proceedings and quieting the plaintiffs' title to the premises against the defendants and each of them. The claim of right to this relief was based upon the theory that the defendant Gleason was the real party in interest in the tax foreclosure proceeding; that he thereby sought to secure title to the property in violation of his duty as secretary and manager of the Fidelity Trust Company; that he acquired the delinquency certificate while that company was the owner of the land; and that the proceedings and the tax deed founded thereon were void as to the Fidelity Trust Company and its successors in title. At the first trial, the foregoing facts were established. The plaintiff offered certain letters tending to prove that the defendant Gleason was the real party in interest; that he personally directed the foreclosure proceedings, paid all the expenses thereof and directed that the tax deed when issued to Hoffman be delivered to himself, and that

the defendant Hoffman was a mere figurehead representing the defendant Gleason in the entire transaction. This evidence was excluded and the action was dimissed. Upon appeal the exclusion of this evidence was held error, and the cause was reversed and remanded for a new trial. The second trial resulted in a judgment for the plaintiffs. The defendants now appeal.

The appellants devote much of their brief to an argument based upon the regularity of the tax foreclosure proceedings, and to the establishment of the claim that, as a matter of law, John Collins was not a necessary party to those proceedings for the reason that, as a matter of fact, the land was assessed in the name of the Fidelity Trust Company. Neither the fact nor the law is disputed. The respondents contend, and we think soundly, that they are both immaterial to the issue here presented. The respondents do not seek to set aside the foreclosure proceedings because of any irregularity therein, or because of any failure to comply with the law regulating such proceedings. This action is grounded in fraud, and it is manifest that if the fraud is established, the statutory regularity of the proceedings would constitute no defense.

The law of the case was clearly settled by our former decision. We there said:

"The law would hardly permit Gleason, representing the Fidelity Trust Company in so close and confidential a relation, whose duty it was to pay the taxes, to become a purchaser at a sale made because of a failure to pay the taxes, and obtain a title without color of fraud as against either the trust company or its grantee." *Collins v. Hoffman, supra.*

The clear effect of our former decision was that the evidence offered to show fraud on the part of the appellant Gleason was sufficient, *prima facie,* to establish that fraud, unless overcome by other evidence. The evidence offered and refused was documentary and was then in the record as identifications. If such was not the meaning of our former decision, it was an idle thing to remand the cause for a new trial

because of the exclusion of that evidence. These letters are now in evidence. We shall not set them out in full nor analyze them in detail. Space will not permit it. It is enough to say that they are largely set out in the briefs and have been carefully examined by every member of this department of the court, and we are at one in the opinion that, without other explanation of his connection with the transaction, they are sufficient to establish that the appellant Gleason was the real party in interest, that he owned the certificate, directed its foreclosure, paid all the expenses of the proceeding, and that the appellant Hoffman acted as a mere figurehead and received the tax deed for Gleason's benefit. The only explanation of this correspondence and of the relations of the appellant Gleason to the transaction is found in his own testimony. He testified that the certificate of delinquency was assigned to the appellant Hoffman "for convenience," admitted that Hoffman represented the Paxton Land Company; that the Paxton Land Company furnished the money to acquire the assignment; that he, Gleason, was president of the Paxton Land Company; that he was the largest stockholder in the Paxton Land Company; that in 1901, and ever since then, he owned something like 13,000 out of 16,000 shares of the capital stock of that company; that the company was practically "owned" by him; that after the deed was issued, Hoffman conveyed the property to the Paxton Land Company; that the Paxton Land Company later deeded the property to one Hogan, or to a corporation in which Hogan was interested; that he, Gleason, gave Hogan a written guaranty that if the title failed, Gleason would personally repay to Hogan the money invested; that when he wrote letters on behalf of the Paxton Land Company he used the word "I" instead of the Paxton Land Company, and used his own personal stationery. We thus have the appellant Gleason attempting to occupy and take advantage of a triplicate capacity in his relation to the transaction: Gleason, the man, Gleason, the stockholder, secretary and manager of the Fi-

delity Trust Company, and Gleason, the president and chief owner of the Paxton Land Company, which is, in effect, Gleason incorporated.

It is manifest that neither Gleason, the man, nor the Paxton Land Company can claim immunity from the infection of fraud imported into the transaction by the connection therewith of Gleason, the stockholder, secretary and manager of the Fidelity Trust Company. He being the moving spirit in each of these three entities throughout the entire transaction, every sound consideration of equity affects the Paxton Land Company with notice of his relation and duty to the Fidelity Trust Company. The Paxton Land Company, whether regarded as Gleason incorporated or as a separate entity, cannot profit by the fraud of which, through its president and principal owner, it had notice. *Concordia Loan & Trust Co. v. Parrotte*, 62 Neb. 629, 87 N. W. 348. Every right which the Paxton Land Company can claim by reason of the tax deed relates to, and must find its validity in, the purchase of the delinquency certificate. This took place while the Fidelity Trust Company was the owner of the land and while the appellant Gleason was its secretary and manager, and was in violation of Gleason's duty to the latter company in that capacity. The purchase of the delinquency certificate was in law a payment of the taxes. As an officer and manager of the Fidelity Trust Company, it was Gleason's primary and elementary duty to see that its taxes were paid and its property protected from tax sale. He occupied to that company the closest relation of trust and confidence. He had charge of its records as its secretary, and conducted its business as its manager. It would be against the plainest principles of equity and public policy to permit him, or a corporation of which he was the chief owner, to profit by his dereliction of duty in this capacity.

"There is a general principle applicable to such cases which may be stated thus: That a purchase made by one whose duty it was to pay the taxes shall operate as payment only;

he shall acquire no rights as against a third party, by a neg-
lect of the duty which he owed to such party. This prin-
ciple is universal, and is so entirely reasonable and just as
scarcely to need the support of authority. Show the exist-
ence of the duty, and the disqualification is made out in every
instance." Cooley, Taxation (2d ed.), p. 501.

"It is well settled that one who is under a moral or legal ob-
ligation to pay the taxes is not in a position to become a
purchaser at a sale made for such taxes. If such person per-
mits the property to be sold for taxes, and buys it in, either
in person or indirectly through the agency of another, he
does not thereby acquire any right or title to the property,
but his purchase is deemed one mode of paying the taxes."
*Christy v. Fisher*, 58 Cal. 256.

See, also, *Maher v. Potter*, 60 Wash. 443, 111 Pac. 453;
*Moss v. Shear*, 25 Cal. 38, 85 Am. Dec. 94; *Barlow v. Hitzler*,
40 Colo. 109, 90 Pac. 90; *Gibson v. Sexson*, 82 Neb. 475, 118
N. W. 77; *Concordia Land & Trust Co. v. Parrotte, supra;
Brooks v. Garner*, 20 Okl. 236, 94 Pac. 694, 97 Pac. 995.
Note to *Cone v. Wood*, 75 Am. St. 229.

If the Fidelity Trust Company had not subsequently con-
veyed this land to Collins, we apprehend that no one would
have the hardihood to contend that its title would be divested
by the tax sale, even as in favor of the Paxton Land Company,
much less as in favor of appellant Gleason, under the facts
disclosed by this record.

But it is argued that the deed of the land in question from
the Fidelity Trust Company to John Collins was made in con-
sideration of the settlement of litigation then pending be-
tween those parties, and that the land was conveyed by the
Fidelity Trust Company by a special warranty deed, and
therefore neither the Fidelity Trust Company nor the ap-
pellant Gleason, as its officer, owed any duty to Collins
either to pay the taxes or to notify him of the tax foreclosure.
Even if these facts might be held material, it is manifest that
the Fidelity Trust Company, having warranted the title
against acts done by it, was in duty bound to either pay the
taxes accruing while it was owner of the land, or, at least,

notify Collins that the certificate was outstanding. We think, however, that these matters are wholly immaterial. As we have seen, the tax sale must find its validity in the purchase of the delinquency certificate. That having taken place while the Fidelity Trust Company was the owner of the land, it amounted only to a payment of the taxes. The transfer of the certificate to an officer of the company cancelled it by force of law. The subsequent conveyance of the land to Collins did not infuse life into this dead certificate. The foreclosure proceedings could not revive it. The proceedings and the deed founded thereon are as void as to Collins as grantee of the Fidelity Trust Company as they would have been as to that company had it retained the land.

It is further argued that there was no evidence that John Collins did not have actual notice of the tax foreclosure proceedings. Obviously, he being now dead, absolute proof of such a negative is next to impossible. It was, however, proved that he was not a party to the proceedings, that no summons was ever published, and that no service of any kind was had, save the acceptance by Gleason for the Fidelity Trust Company. This raised a probable lack of actual notice sufficient to shift the burden of proof. If the appellant ever gave such notice, he is cognizant of that fact, and the duty was thus cast upon him to show it. The relation of the appellant Gleason to the entire transaction was such as to make this matter of notice a thing peculiarly within his knowledge. He attempted no such showing.

We are not impressed by the contention that, if Collins in his lifetime had used due diligence, he would have known of the foreclosure proceedings and protected his rights. Even had he known of the purchase of the tax certificate by the appellant Gleason and the Paxton Land Company and all of the attendant circumstances, he would have had the right to treat it as a payment of the taxes. His negligence, if he was negligent, in failing to defend in the tax foreclosure, to

which he was not a party, by setting up these facts, cannot purge the transaction of fraud as to him.

"The doctrine is well settled, that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry, 'negligence,' as against his own deliberate fraud." *Linington v. Strong*, 107 Ill. 295.

See, also, *Albany City Sav. Inst. v. Burdick*, 87 N. Y. 40.

Whether it was incumbent upon the respondents to tender these taxes in order to maintain this action, we find it unnecessary to decide. They have confessed that duty, made the tender, and kept it good by payment into court.

The judgment is affirmed.

MAIN, MORRIS, and FULLERTON, JJ., concur.