DOWDLE *v.* WHEELER.

Opinion delivered October 14, 1905.

1. EJECTMENT—TITLE.—As the burden of proving title in himself is undertaken by one who sues in ejectment, the defendant may rely upon the weakness of plaintiff's title. (Page 531.)

2. ACCRETION—INTERVENING CREEK.—Where the evidence establishes that there was a process of accretion going on against the north shore line of a certain river at a given locality, and that this process continued until the bed of the river rose to the level of the bed of a creek which had previously run into the river above, and that then, as the waters of the river receded, the flow from the creek prevented further deposits in its extended channel, and established a permanent channel along the old bed of the river, the land which formed as accretion between the river and the creek became an addition to the land beyond the creek lying adjacent to the former shore line of the river. (Page 532.)

3. ADVERSE POSSESSION—ENCLOSURE—NATURAL BARRIERS.—For the purpose of establishing adverse possession of land, it is no objection that natural barriers are taken advantage of, if the natural, together with the artificial, barriers used are sufficient to clearly indicate dominion over the premises, and to give notoriety to the claim of possession. (Page 533.)

4. SAME—CHARACTER OF POSSESSION.—The fact that defendants built a fence across the mouth of a peninsula formed by the junction of a river and a creek on land owned by them, and pastured cattle therein, was not sufficient notice to plaintiff, who owned part of the land so inclosed, that her land was being held adversely. (Page 534.)

Appeal from Conway Circuit Court in Chancery.

WILLIAM L. MOOSE, Judge.

Affirmed.

*Ratcliffe & Fletcher,* for appellants.

The land is an accretion to the land of appellants. 84 Mo. 373; 16 Abb. N. C. 176; 37 Hun, 537; 69 N. W. (Wis.) 992; 55 N. W. (Wis.) 770; Gould on Waters (1883 Ed.), § 148; 146 U. S. 445; 61 Ark. 435; 134 Mo. 633, 36 S. W. 612; 64 S. W. 183, 187; 58 L. R. A. 193; 21 Pac. (Cal.) 536; 63 Tex. 332-3; 73 Ark. 199. The action is barred by the statute of limitation. 75 Cal. 584; 17 Pac. 705; 51 N. Y. Supp. 937; 47 S. W. 821; 5 Cowen (N. Y.), 216; 136 Fed. 159; 74 Cal. 11; 47 S. W. (Tex.) 821; 56 Pac. 513. Appellee is estopped by the

34

description in her deeds.    18 How. 150; 10 Pick. 249; 15 Johns. 451.

*A. F. Vandeventer, C. C. Reid,* and *Sellers & Sellers,* for appellee.

Appellee's right to accretion is not cut off by the creek running over it.  25 Ark. 122; 44 La. Ann. 1044; 53 Am. Rep. 212; 55 S. W. 1031.  The acts of possession were not such as to create title by limitation.  82 S. W. 834; 1 Cyc. p. 1037; 105 Mo. 255; 3 Humph. 447; 29 Ga. 152; 12 Tex. 219; 74 Ia. 172; 64 S. W. 58; 40 S. W. 928; 45 S. W. 156; 5 Cowen (N. Y.), 216; 27 S. E. 255; 77 Am. Dec. 586; 65 Ark. 422; 26 Am. Dec. 95; 59 Am. Dec. 115; 71 Am. Dec. 198; 94 Am. Dec. 350; 42 Ark. 118; 30 Ark. 640; 33 Ark. 154; 65 Ark. 422; 40 S. W. 893; 35 S. W. 776; 42 S. W. 232; 49 Ark. 266; 68 Ark. 551; 69 Ark. 424.

*Ratcliffe & Fletcher,* for appellants, in reply.

The same proof of possession is required in claims under or without color of title.  30 Ark. 655; 40 Ark. 237.

McCulloch, J.  This was an action in ejectment brought by Mrs. G. M. Wheeler against R. A. and M. A. Dowdle to recover part of an accretion, which she claims had been formed to the original land of which she held title.

The Dowdles filed an answer, denying that the land was an accretion to Mrs. Wheeler's land and alleging that it was an accretion to their lands, and also pleaded the seven years statute of limitation.  The case was transferred to equity on motion of the defendants.  A decree was rendered in Mrs. Wheeler's favor, and the Dowdles appealed.

There is no question that Mrs. Wheeler owns the original land to which she claims the land in controversy is an accretion, and that it was at one time upon the north bank of the Arkansas River.  The same is true as to the title of the Dowdles to the original land to which they claim the land is an accretion.  The plats of the original United States surveys show that the original land owned by the Dowdles is situated south of the Point Remove Creek, which at that time emptied into the Arkansas River at the terminus of the Old Cherokee line—the land of the Dowdles coming to the creek immediately opposite this point or a little south thereof—and that the original land of Mrs.

Wheeler bordered upon the Arkansas River some distance, perhaps sixty-three rods, below the mouth of the creek, and down the stream of the Arkansas River. Point Remove Creek flows in an easterly direction, and the Arkansas River from the mouth of the creek, at the time of the original survey, flowed in an easterly direction. The old Cherokee line, commencing on the old bank of the river at or near the mouth of Point Remove Creek, runs north, 53 degrees east, thus forming, with the old channel of the river, an acute angle with the apex at the mouth of the creek. It is shown that the accretion began to form up stream, and gradually extended down stream until the land in controversy was formed in front of the original land owned by Mrs. Wheeler. In front of the original land of the Dowdles accretion was formed which is in their possession, and their right thereto is not controverted. As the accretion gradually extended down stream, the mouth of Point Remove Creek extended itself eastward along the old channel of the river until it passed the original land of Mrs. Wheeler, and is now some distance below (east) of her east boundary. Its bed, east of the old mouth, is now along the old channel of the river. It is three chains wide at low water, and four and one-half to five chains wide at high water, and has at all times separated the accretion in controversy from Mrs. Wheeler's original land.

It is the contention of appellants that the land in controversy is not accretion to Mrs. Wheeler's land, and that the formation began as an accretion to the Dowdles' land; and as it gradually continued down stream, the extension of Point Remove Creek kept pace with its progress, thus preventing any contact with or accretion to Mrs. Wheeler's land. They say that the land in controversy belongs to them; that, the formation having commenced as an accretion to their land, their title followed its progress down stream; or that the title to this land is in the State. At any rate, they contend that it is not an accretion to Mrs. Wheeler's land, and does not belong to her.

The burden is upon Mrs. Wheeler to prove that it is an accretion to her land. Appellants may rely upon the weakness of the title of their adversary. *Nix* v. *Pfeifer*, 73 Ark. 201, and cases cited.

A careful consideration of the evidence convinces us that the chancellor was correct in his conclusion that the land in controversy was an accretion to the original tract of Mrs. Wheeler. There is much plausibility in the contention of appellants, but it ignores certain facts clearly established by the evidence. They contend that the channel of Point Remove Creek runs with the old bank of the river, but it is established by the proof that there is a narrow margin of accretion between the old shore line of the river and the bank of the creek. This goes to show that there was a deposit against the shore line before the waters of the river receded, that this process continued until the bed of the river rose to the level of the creek's bed, and that then, as the waters of the river receded, the flow from the creek prevented further deposits in its extended channel, and established a permanent channel along the old bed of the river. This theory is, we think, far more consistent with the physical facts existing now, and within the recollection of witnesses, than the theory advanced by appellants that the flow from the creek followed the recession of the waters of the river before there could be a deposit against the old shore line, and that the deposit began at the extended south bank of the creek. If the deposit formed in the manner which we have stated, it is, in a legal sense, an accretion to the lands of appellee, and became her property, notwithstanding the conceded fact that the flow of water from the creek separated it from the original tract.

We held in *Nix* v. *Pfeifer, supra,* that "when the formation begins with a bar or an island detached and away from the shore, and by gradual filling in by deposit, or by gradual recession of the water, the space between bar or island and mainshore is joined together, it is not an accretion to the mainland in a legal sense, and does not thereby become the property of the owner of the mainland." So, if it were proved that there was no deposit against the old shore line, and no recession of the waters therefrom, the formation out from the mainshore would be a bar or island, and would in no sense constitute an accretion to the mainland. This is what was held in *Crandall* v. *Smith,* 134 Mo. 633, which is relied upon by learned counsel for appellants to sustain their contention. We find, however, the facts to be to the contrary in this case. The fact that a stream or body of water separ-

ates the accretion from the original shore line would, as said by
the Missouri Supreme Court (*DeLassus* v. *Faherty,* 164 Mo. 361),
at first blush seem to be an insurmountable barrier to a claim of
ownership on the part of the shoreowner; yet, where it is shown,
as in the case at bar, that the formation began by a deposit against
the shore of the mainland, the subsequent existence of an inter-
mediate stream of water between the accretion and mainland
does not exclude such claim of ownership.

This brings us to a consideration of appellant's plea of the
seven years statute of limitations. They allege and undertake to
prove that they have held actual adverse possession of the land in
controversy for more than seven years continuously next before
the commencement of the suit. The chancellor also found
against them on this issue.

The only character of occupancy attempted to be proved by
appellants is the following: The extended channel of Point Re-
move Creek on the north side, and the new channel of the Ark-
ansas River on the south and east, form a headland or neck of
land extending eastward from the former mouth of the creek, and
appellants erected across this neck or headland a wire fence
from the creek near its former mouth to the bank of the river.
They claim this to be an inclosure in which they pastured cattle—
the river and creek forming natural barriers, which, with the wire
fence, completed the inclosure. They also show that along
the creek in a few places at intervals they stretched wires to pre-
vent cattle from attempting to cross the creek. This, however,
is disputed, and the testimony is conflicting in regard thereto.

It is no objection that natural barriers are taken advantage of
in constructing enclosures of land, provided that the same are
not out of proportion to the artificial barriers erected. If the
natural, together with the artificial, barriers used are sufficient to
clearly indicate dominion over the premises, and to give notoriety
to the claim of possession, it is sufficient to put the statute of limi-
tation in motion. *Goodwin* v. *McCabe,* 75 Cal. 584; *Sanders* v.
*Riedinger,* 51 N. Y. Supp. 937; *Thomas* v. *United States,* 136
Fed. 159. "Natural barriers may or may not be of such a charac-
ter as to serve as part of an enclosure by which a party subjects
land to his dominion and control, and so acquires possession of it."
*Goodwin* v. *McCabe, supra.*

The question, after all, in such cases is whether the enclosure, like other acts of possession and claim of ownership, is sufficient to "fly the flag" over the land, and put the true owner upon notice that his land is held under an adverse claim of ownership. We think that in this case these acts were insufficient to sustain a claim of adverse possession. They did not constitute such notoriously hostile acts as necessarily put the owner of the land upon notice. This is especially true because the fence erected by appellants from creek to river bank was not on the land of Mrs. Wheeler, and its presence there was not notice to her that her land was fenced. She was not bound to take notice of the natural objects —the creek and the river—as barriers enclosing her land. We hold that appellants pasturing cattle within such inclosure did not, under the circumstances, constitute adverse possession so as to ripen into title.

Upon the whole case, we find no error in the decree of the chancellor, and the same is affirmed.