BARTEL *v.* INGRAM.

Opinion delivered December 17, 1928.

*Arnold & Arnold,* for appellant.

*Patterson & Rector* and *Powell, Smead & Knox,* for appellee.

HUMPHREYS, J. Appellant brought this suit on February 10, 1926, against appellees, in the chancery court

of Union County, seeking to foreclose a trust deed executed on the 16th day of February, 1916, to secure an $8,000 note of even date, upon the following described real estate, to-wit: "One hundred and sixty-four and 94/100, more or less, acres, and being further described as the twenty-six, more or less, acres of fractional southwest quarter of the southwest quarter of section 19, township 17, range 15, and the 138.94, more or less, acres of fractional northwest quarter of section 30, township 17, range 15, known as the C. A. Ingram Farm, in Union County, Arkansas."

The note was executed by Finis S. Ingram to his own order, due five years after date, and bearing interest from date until paid at the rate of 7 per cent, per annum. The deed of trust was executed to Frank D. Ayers, as trustee, to secure the payment of the note. Upon a trial of the cause the court found that there was due upon the note $13,600, including interest, after allowing credit for the payments which had been made, and rendered a judgment against Finis S. Ingram for the amount, with interest thereon at 7 per cent. per annum until paid, from and after February 16, 1928; and also found that, at the time of the execution of the deed of trust, Finis S. Ingram had no title to the land described therein, but that he subsequently acquired by inheritance from his mother an undivided one-seventh interest, which had been conveyed by him to third parties, some of whom had not been made parties to the foreclosure suit, and against whom, on that account, a decree of foreclosure could not be rendered; and also found that the Standard Oil Company, C. H. Murphy, Mrs. Anna Cordell, A. C. Steere, George W. James, James Kinnebrough and Andrew McAnsh, some of whom had acquired fee rights and other mineral rights in Finis S. Ingram's one-seventh interest in said land, had not been served with process in accordance with law. Based upon these findings, the court rendered a decree of foreclosure and order of sale of the J. R. Ingram one-fourth interest in fee and the I. Felsenthal 1/32 interest in the oil, gas and mineral

rights in the Finis S. Ingram one-seventh interest in said land, on the ground that John R. Ingram and I. Felsenthal were the only persons claiming an interest therein who had been brought into court on legal process. In short, a 1/28 interest in the fee and 1/224 in the oil, gas and mineral rights owned by I. Felsenthal in the land described in the deed of trust were foreclosed and ordered sold to satisfy the amount of $13,600 adjudged to be due appellant by Finis S. Ingram.

Appellant has appealed, and contends for a reversal of the decree because the trial court refused to foreclose and order a sale of the entire fee interest in the real estate described in the deed of trust to satisfy the amount due him by Finis S. Ingram.

Appellees, John R. Ingram and I. Felsenthal, have procured a cross-appeal, and contend for a reversal of the decree on the grounds that the indebtedness was fictitious and the deed of trust executed as a cover against the creditors of Finis S. Ingram; that the purchase of the land under the tax forfeiture of 1912 by Finis S. Ingram, under which he claimed title to the land described in the mortgage, was in effect a redemption thereof for his mother, who was the owner at the time of the forfeiture, else ineffective to vest title in him, as he was at the time a mortgagee and assignee of a $4,000 note and deed of trust executed for the benefit of his brother and himself by his mother; that the tax deed obtained by him under the forfeiture was void on account of the insufficiency of the description of the land, and that the deed of trust was void for the same reason, and for the further reason that it was not given for a present consideration, and did not provide for future advances.

Appellant's main contention for a reversal of the decree is that the court erred in refusing to foreclose the entire fee simple title to the lands described in the deed of trust, instead of foreclosing limited portions of a one-seventh interest therein owned by those personally served with process. This contention is based upon the alleged erroneous finding of the trial court that the tax

deed to the land procured by Finis S. Ingram, which constituted his only title thereto at the time he executed the trust deed to Ayers for $8,000, was void on account of defects in description, or on account of him being a mortgagee in the $4,000 deed of trust executed by his mother in trust for the benefit of himself and his brother in 1909, and which was assigned to C. D. Bosbury in 1910, and by Bosbury to Kuhlmey in 1918, and which has never been paid.

The land in question was owned by the mother of Finis S. Ingram, Mrs. Carrie Ingram, in 1904. It was wild land at that time. She sold the land to Finis S. Ingram, in the year 1904, for $............, the consideration for same to be paid in monthly installments. Finis was her main support, and, after paying her for the land, he conveyed it back to her in 1907 as a gift. The $4,000 deed of trust was executed by her for the benefit of her two sons, in 1909, from whom she obtained money with which to make improvements and establish a home. Her son Fred paid her $1,000 and Finis advanced the balance from time to time to build the house and make other improvements. Mrs. Carrie Ingram owned other property adjoining and near this land, a part of which she sold to other parties, and a part she kept. The land in question forfeited for taxes in 1912, and was bought in at the tax sale by J. D. Faulkner, and on the 20th day of June, 1913, he assigned his certificate of purchase to Finis S. Ingram, who presented same to the county clerk two years after the sale of delinquent lands, and procured a tax deed to each tract on November 8, 1915. The twenty-six-acre tract was described in the tax deed as "fractional southwest quarter of the southwest quarter section 19, township 17, range 15—26 acres." The 138.94-acre tract was described in the tax deed as "fractional northwest quarter section 30, township 17, range 16—138.94 acres."

Finis S. Ingram testified that he never told his mother that he purchased the land at tax sale, or that he had taken a tax deed to it; that she was residing upon

it at the time of the forfeiture, and continued to reside upon it until her death, on the 16th day of March, 1916; that she told him that she wanted him to have the place, in conversation and by letter, after he purchased the tax certificate; that he was residing in Chicago, and went to El Dorado, near which the land was located, in September, 1915, and, after procuring the tax deed, remained upon the land until December, 1915; that during the time he was there he made extensive improvements upon the property, preparatory to marrying and returning with his wife to make his home upon it; that he built several tenant houses, and left them occupied by his employees and tenants when he returned to Chicago; that he returned to El Dorado the March following, to attend his mother's funeral, and that, after her death, he put his brother John in possession of the place, to look after it for him.

John testified that he went into possession of the place as representative of all his mother's heirs, and under an agreement with them to that effect. There is a sharp conflict in the testimony as to whether John was in possession of the property for himself and the other heirs, or as the agent of Finis S. Ingram, and there are many circumstances appearing in the record corroborating the statement of each.

The record is voluminous, and it would extend this opinion to an unusual length to set out the substance of the testimony of each witness. There is one circumstance in the record, however, tending so strongly to support the theory that Finis S. Ingram was acting as the agent of his mother when he purchased the tax certificate, that special mention should be made of it. In March, 1919, Finis S. Ingram joined in a trust deed with his brothers and sisters conveying this particular land and other lands to W. S. Sloan, with power to sell same to pay the $4,000 deed of trust held by Kuhlmey, amounting at that time to $4,980, in which the grantors recited that they were the sole heirs of Mrs. Carrie Ingram, and which trust deed also recited that Finis S. Ingram, for

$500, should reconvey by quitclaim deed to the other heirs all of his right, title and interest held by him in any of said lands above their respective one-seventh interest, owned as heir of Mrs. Carrie Ingram, and reserving only an undivided one-seventh interest, in order that the title to said lands should be altogether in all the heirs alike. This act on his part harks back and reflects that, at the time of purchasing the tax certificate, his intention was to redeem the land for his mother and for the benefit of his father-in-law, who had acquired the $4,000 note from Bosbury, to whom Finis S. Ingram had transferred it. We have read the testimony carefully, and have concluded that the weight thereof supports the finding of the trial court to the effect that Finis S. Ingram acquired nothing under the tax deed, but was acting as agent for his mother when he purchased the tax certificate. We think a fair interpretation of the testimony is that he was her main support, and was looking after her interest at the time he purchased the tax certificate, and had no intention whatever of acquiring her fee simple title to the land by the purchase thereof.

Again, he was not in a position to acquire a tax title to the land adversely to his mother, because she had executed a deed of trust thereof to a trustee for the benefit of Finis S. Ingram and his brother for $4,000. It is true that in 1910 he transferred the $4,000 note to Bosbury. It must be presumed that he did this in the usual course of business by an assignment of the note. If he did, he was a guarantor of the payment thereof. The rule in Arkansas is that, although a mortgagee may pay the taxes on mortgaged land and claim reimbursement therefor, he cannot acquire title thereto under a tax forfeiture. *Ross* v. *Frick Co.,* 73 Ark. 45, 83 S. W. 343. But if he had assigned the note to Bosbury, which carried an assignment of the deed of trust, at the time he purchased the outstanding tax title, he comes within the rule that a mortgagee who assigns his note to another, if he guarantees the payment thereof by indorsement, is still under a duty to pay the taxes to protect his interest, and a

purchase by him at the tax sale would merely amount to a redemption of the land. *Howard Investment Co.* v. *Benton Lands Co.,* 5 Kans. App. 761, 46 Pac. 989; *Concordia Loan & Trust Co.* v. *Parrote,* 62 Neb. 629, 87 N. W. 348; *Manley* v. *Debenture B. Liquidation Co.,* 64 Kan. 573, 68 Pac. 31; *Beecham* v. *Gurney,* 91 Ia. 621, 60 N. W. 187; *Newton* v. *Marshall,* 62 Wis. 8, 21 N. W. 803.

As stated above, it must be presumed that he indorsed the note, as that would be the usual course, and the burden rested upon him to disprove that fact, if same was indorsed by him without recourse.

Appellees also insist that the tax deed was void because the description of the land therein was insufficient to identify it. The land in the 26-acre tract was described as ''fractional southwest quarter of the southwest quarter, section 19, township 17, range 15—26 acres,'' and in the 138.94-acre tract as ''fractional northwest quarter section 30, township 17, range 16—138.94 acres.'' This court ruled, in the case of *Turner* v. *Rice, ante,* p. 300, that, ''where a deed conveys land by government call, the grantee takes the whole of the call, without reference to the number of acres following the description,'' and we see no reason why the grantee would not take the whole of a fractional call just as he would a call that was not fractional. In other words, we are of opinion that the description in the tax deed was sufficient to identify the land.

Appellant also contends that the trial court committed reversible error in limiting the foreclosure and sale to that portion of the one-seventh interest of Finis S. Ingram in the land which he acquired by inheritance from his mother, to the interest of those personally served with process. Appellant argues that the claimants to the remainder of said one-seventh interest were properly served and brought into court pursuant to the unknown owner statute, being § 1161 of Crawford & Moses' Digest, which is as follows:

''Where, in an action against the heirs of a deceased person as unknown heirs, or against other persons made

defendants as unknown owners of any property to be divided or disposed of in an action, it appears by the complaint that the names of such heirs, or any of them, or such other persons, are unknown to the plaintiff, a warning order as directed in the last section shall be made by the clerk against such unknown heirs or owners.''

The statute was not intended to apply to parties whose names and the interest they claimed in the land in question appeared in the records of the county, and whose names and the interest they claim might be ascertained from an inspection thereof, and their whereabouts ascertained. The names of the persons claiming an interest in the land and the extent of the interest claimed by them might have been ascertained in the instant case from an inspection of the public records in the county, and their whereabouts ascertained by inquiring, so they should have been served by personal process.

This disposes of the questions presented for determination by the direct appeal, and several of the questions presented by the cross-appeal. We will now proceed to determine the other questions presented by the cross-appeal.

First, it is insisted that the debt secured by the $8,000 deed of trust was fictitious, and that it was executed as a cover to prevent the creditors of Finis S. Ingram from reaching his assets. There is nothing of consequence in the way of testimony in the record tending to prove either contention. Finis S. Ingram testified that he made the $8,000 note payable to his own order for the purpose of selling it in the market, and that he secured it by the trust deed to enable him to do so; that he sold and transferred the note in two or three weeks to Frank D. Ayres, the trustee in the deed of trust, for value, who afterwards assigned it to appellant. Appellant testified that he bought the note and trust deed from Frank D. Ayres, and paid full value therefor. This testimony is practically undisputed, and fully sustains the finding of the trial court to the effect that both instruments were executed and negotiated in good faith.

Appellees next contend that the $8,000 deed of trust was void because the land therein was not described in such way as to identify it. The land as described in the mortgage has heretofore been set out verbatim. The description in the mortgage would be insufficient to identify the land if it were not for the clause referring to it as the C. A. Ingram Farm. Without this identifying clause there would be no key or guide to determine the particular part of the fractional calls the mortgage intended to convey. If, however, the C. A. Ingram Farm, in said section 19, contained 26 acres, and in said section 30 contained 138.94 acres, and contained no other lands in said sections, the description, when read together, would furnish a means by which the land might be definitely located. The undisputed proof showed that at the time of the execution of the deed the Ingram Farm in said section 19 contained only 26 acres and that the Ingram Farm in said section 30 contained 139.11 acres, or only .17 acres more than was called for in the deed of trust. This slight variance in the acreage is too small to be taken into account. Mrs. Carrie Ingram had disposed of all the land she owned in said sections, except the 26-acre tract in said section 19 and the 138.94-acre tract in said section 30, at the time the deed of trust was executed.

Appellees next contend that the $8,000 deed of trust was void because not given for a present consideration, and did not provide for future advances. The deed of trust did not purport to secure future advances; it only purported to secure a note of even date, which the testimony showed was intended to be sold in the market and transferred for a consideration. When the note and deed of trust were sold for value, the consideration was received as a present consideration. At the time they were transferred for value, the note became a valid subsisting obligation and the deed of trust a valid subsisting security for the payment of the note.

It is suggested by appellees that the note was not sufficiently described in the deed of trust to identify it

as the note intended to be secured. The note is described in the deed of trust as follows: ''Whereas, the said Finis S. Ingram, grantor herein named, is justly indebted upon one promissory note bearing even date herewith, payable to the order of himself, and by himself indorsed, same being dated at Chicago, Illinois, for the sum of $8,000, with interest at the rate of seven per cent. per annum, payable annually, said principal note to become due and payable at 505 Chamber of Commerce Building, Chicago, Illinois, five years from the date hereof.''

We do not see how the note could be more perfectly described. The description sufficiently identified it as the note intended to be secured.

No error appearing, the decree is affirmed.

Mr. Justice KIRBY dissents.