Evans *v.* F. L. Dumas Store, Inc.

4-4268

Opinion delivered April 13, 1936.

*Claude E. Love,* for appellant.

*N. A. Cox,* for appellee.

Butler, J. Appellee was the owner of the record title of SW¼ of SW¼, section 5, township 17 south, range 14 west, in Union County, Arkansas. This land was sold for the taxes delinquent in 1930 to the appel-

lant, and the two years for redemption having expired, a tax deed was issued to him. Appellee filed suit to cancel said deed and from a decree granting the prayer of his complaint comes this appeal.

The sole question involved relates to the validity of the sale for delinquent taxes for the year aforesaid. In the court below the appellee alleged eleven grounds as a basis for its contention, and there and now has abandoned all of these save six of the same which we will notice in the order presented.

1. The first ground for the alleged invalidity of the sale rests on the contention that there was no valid assessment of taxes against the land. This contention is based on the proposition that the testimony affirmatively shows that no assessment list was prepared and sworn to as provided by § 9901 of Crawford & Moses' Digest, and by § 9873 (a) of Castle's 1931 Supplement to Crawford & Moses' Digest. These sections, together with § 9916, Castle's Supp. (act 172, § 16 of the Acts of 1929) providing for the preservation of assessment lists made by the property-owner relate to assessments of personal property and have no application to the assessments of real estate. The assessment of real estate is governed by § 2, act 172 of the Acts of 1929 (Castle's Supplement 1931 to Crawford & Moses' Digest § 9917C). It is accomplished by the assessor without the intervention of the property-owner and the case of *American Trust Co.* v. *Nash*, 111 Ark. 97, 163 S. W. 178, cited by appellee, involved only the assessment of personal property and has no application to the assessment of real estate.

2. The next attack on the validity of the sale is on the ground that there was no valid levy for the taxes of 1930. There are five separate objections urged as follows: (a) The order levying school taxes does not levy for the year 1930. (b) It shows a levy for "teachers" which is unauthorized by the Constitution as amended. (c) There are no dollar marks or decimal points to show what money, or if any money was levied. (d) There are no ditto marks or other signs to indicate that the respective items are referred to the headings

above. (e) The order is not signed by the judge; there is no mark, certificate or other indication to identify either this order, or the whole minutes, as being what it purports to be.

(a) That part of the order of the levying court making the specific levy for district school taxes does not specify for what year the levy was made, but this was not necessary for the reason that in the opening recital of the minutes of the levying court it is declared, *inter alia,* that the purpose for which the levying court met was for levying "of the taxes for the year 1930." This sufficiently designates the year for which the levy was made and is not necessary to be repeated with respect to each item of the levy made.

(b) Under this head it is urged that the levy of 18 mills for "teachers" under the head, "Rate in mills," does not comply with the law which authorizes a levy for "maintenance of schools." The salary of teachers manifestly is for the maintenance of schools, and the levy is not invalid because a more general and broader term, "maintenance of schools" was not used, although the better practice would be to follow the language of the law, for otherwise the expenditure of the tax levied might be restricted to the salaries of teachers only, a point, however, on which we find it unnecessary to express an opinion.

(c) and (d). These objections relate to the failure to use dollar marks, ditto marks, etc. Without setting out that part of the order criticized, we think it sufficient to say that on its examination, no doubt could arise as to what rate, or for what purpose, the levy was made. No particular form is essential and one is sufficient, as in this case, where there can be no doubt as to the amount of the levy and the purpose for which it was intended.

(e) This point was not raised by any specific allegation in the complaint nor is there any indication in the record to the effect that it was pressed to the attention of the trial court. Moreover, the failure of the county judge to sign the record could not affect the validity of the levy, and if required, would serve no purpose except to authenticate said record. In support of the conten-

tion that the signature of the judge is a prerequisite to the validity of the levy, the case of *Board of Conference, etc.* v. *Phillips,* 187 Ark. 1113, 63 S. W. (2d) 988, is cited by the appellee. This case does not, however, support that contention. It is true, the record there was signed not only by the county judge, but by the justices composing the levying court; but the questions involved in that case bear no relation to those arising in the instant case, and it was not there held that the signatures were required.

In *Shultz* v. *Carroll,* 157 Ark. 208, 248 S. W. 261, cited by appellee, the record of the levying court, held to be ambiguous, is unlike the record in the case at bar. In that case the record failed to show that the figures under the head, "Amount taxes voted" 7, and under the heading, "For What Purpose" "5 gen. 2 bldg.," gave nothing to indicate what these figures were intended to represent. Whereas, in the instant case there appears over the heading, "Teachers" "Bldg.," the heading, "Rate in Mills." This removes any ambiguity and distinguishes this case from the cited case.

In *Carter* v. *Wasson,* 189 Ark. 942, 75 S. W. (2d) 819, cited and relied on by appellee, the comment by the court relative to no "dittos" appearing opposite any of the lands listed was made in connection with a duplication of assessment by reason of which the tract of land sold at the tax sale for a substantial amount in excess of the taxes, penalty and costs due, and it was for this reason that the court in that case held the tax sale invalid.

3 and 4. These objections to the validity of the sale are that the clerk did not properly list the lands or properly extend the taxes against them, and that, as delivered to the tax collector, the tax books did not correctly show a valid extension of the taxes. Section 10,009, Crawford & Moses' Digest, provides that the clerk of the county court shall make out, in books prepared for that purpose in such manner as the auditor of State shall prescribe, a complete list of all the taxable property in his county and the value thereof; and, with relation to real estate, provides that "each separate tract of real property in each congressional township in his county,

other than town or city property, shall be contained in a line, or lines, opposite the names of owner or owners, arranged in numerical order." "Each separate lot or tract of real property in each city or town shall be set down in a line, or lines, opposite the names of the owner or owners, arranged in numerical order."

Section 10,010 is as follows: "The clerk of the county court shall, after receiving statements of the rates and sums of money to be levied for the current year from the auditor of State, and from such other officers and authorities as shall be legally empowered to determine the rates or amount of taxes to be levied for the various purposes authorized by law, forthwith determine the sums to be levied upon each tract or lot of real property in his county adding the taxes of any previous year or years that may have been omitted, and upon the amount of personal property, moneys and credits listed in his county in the name of each person, company or corporation, which shall be assessed equally on all real and personal property subject to such taxes."

The objection to the listing of the lands and the extension of the taxes is that the land was described as SW SW and that there were no ditto marks, that the word "acres" was not placed after the figure "40," nor a dollar mark before the figure "140" under the column headed, "Valuation," etc. A photostatic copy of the record as prepared and transmitted to the clerk, shows that the record was divided into columns, the first being the name of the owner; then a column for parts of sections; then columns headed "Section," "Township" and "Range" followed by others for area and valuation. The first tract described opposite the name of the owner is E½ NE, section 5, township 17, range 14, 80 acres. Following this description, without dittoing the section, township and range, appear the descriptions of other subdivisions comprising a section. Following that, the first description appearing after the name of the owner is SE SE, section 6, township 17, range 14, and, as in section 5, there follows without ditto the remainder of the subdivisions of that section. Then follow descriptions commencing with W¼ SE, section 7, township 17, range

14, and continuing until the subdivisions of that section are described. Following the land descriptions appear columns for road district, school district, and rate district school tax. The next column is headed "State Tax." Immediately below is the rate in mills and then follows the column for county tax and the rate in mills. Then follows a column for district school tax and one for total State and county taxes. In each of these columns the proper extensions are made and we conclude that the record is such that any person of average information and understanding could not be mistaken as to the tract of land assessed, its valuation, and the amounts of tax assessed for the several purposes allowed by law. We are of the opinion that the record, as prepared by the clerk and delivered to the collector, is in substantial compliance with the sections of the Digest last cited above and that the case of *Mixon* v. *Bell,* 190 Ark. 903, 82 S. W. (2d) 33, cited by the appellee, is not authority to the contrary.

6. The validity of the sale is next questioned on the ground that the clerk failed to advertise the delinquent list in the manner and form required by law and that the clerk's certificate does not show that the list was published and the lands sold in conformity to law. Much of the argument under this heading is in line with that dealing with the alleged failure to list and extend the taxes, noted under headings numbered "3 and 4," and attention is called to the fact that the notice actually published is not an exact reproduction of the delinquent list on file in the clerk's office. The law does not require that this should be so.

Section 10,082, Crawford & Moses' Digest, provides: "The collector shall, by the second Monday in May in each year file with the clerk of the county court a list or lists of all such taxes levied on real estate as such collector has been unable to collect, therein describing the land or city or town lots on which said delinquent taxes are charged as the same (are) described on the tax books, and the collector shall attach thereto his affidavit to the correctness of such list. The clerk of the county court shall carefully scrutinize said list and

compare the same with the tax-book and record of tax receipts, and shall strike from said list any tract of land, city or town lot upon which the taxes shall have been paid, or which does not appear to have been entered upon the tax-book, or that shall appear from the tax-book to be exempt from taxation.''

It will be observed that no particular form for the delinquent list is prescribed by this section and § 10,084, Crawford & Moses' Digest, providing for the publication of delinquent lists, is complied with where the description of land is given with the name of its purported owner and the total amount stated for which said land is to be sold. The records on file in the clerk's office show the separate amount of taxes, of penalty and of costs. These are open to the taxpayer in order that he may inform himself as to the correctness of the sum appearing in the notice of the intended sale for delinquent taxes, penalty and costs. The list involved in the case at bar, as published, showed the name of the supposed owner of each tract, its description and the total amount of tax, penalty and costs charged against it, and is a substantial compliance with the requirements of the law.

Objection is made to the heading of the publication notice in that it refers to ''the taxes and penalties charged'' without referring to costs, whereas the certificate shows that the lands were sold for ''the taxes, penalty and costs.'' The notice and certificate are substantial copies of the form prescribed by § 10,085 of Crawford & Moses' Digest and of the recitals in the certificate made by the clerk of the sale prescribed by § 10,092, *ib*.

7. It is next contended that the tax deed is void on its face because several tracts of land were included in the deed for which a gross amount was paid. This objection would be well taken under the rule announced in *Cocks et al.* v. *Simmons*, 55 Ark. 104, 17 S. W. 594, and *Campbell* v. *Sanders*, 138 Ark. 94, 210 S. W. 934, but for the fact that this rule has been changed by statute now found as § 10,108, Castle's 1927 Supplement to Crawford & Moses' Digest, which permits one owning more than one certificate of purchase, or having a certificate

of purchase for more than one tract of land purchased at any one sale to have included in one deed any number of such tracts sold at the same sale.

Appellant contends that appellee's cause of action is barred by the provisions of § 10,119, Crawford & Moses' Digest. This question we need not decide for the reason that as we view the record, as presented and argued by counsel, we find the tax sale valid and that the deed to the appellant based thereon served to divest the title of the appellee. Accordingly the decree of the trial court is reversed, and the cause is remanded with direction to dismiss the complaint of appellee for want of equity, and confirm title in appellant.