ALPHIN *v.* BANKS.

4-4511

Opinion delivered February 8, 1937.

564

*Mahony & Yocum,* for appellants.
*Stevens & Stevens,* for appellees.

SMITH, J. This appeal involves the validity of a sale for the taxes of 1926 made in 1927 of lands described in the tax books and in other records relating to the sale as follows: Southwest quarter section 3, township 20 south, range 18 west, 112.28 acres, and northeast quarter of the southeast quarter section 4, township 20 south, range 18 west, 40 acres.

J. S. Alphin was the purchaser, and upon the expiration of the period of redemption he received from the county clerk a tax deed conforming to § 10108, Craw-

ford & Moses' Digest. Suit was brought to cancel this deed by appellees, who were the children and grandchildren and only heirs-at-law of George Banks, who received from the United States a patent to the lands described above, and this appeal is from a decree granting the relief prayed. It was alleged and shown that the patentee died in possession of the land in 1912, and that some one or more of the children or grandchildren have since been in possession.

The tax sale was made in the same county in which the tax sale reviewed in the recent case of *Evans* v. *Dumas Store, Inc.*, 192 Ark. 571, 103 S. W. (2d) 107, occurred. The opinion in that case was delivered one week after the rendition of the decree from which this appeal comes, and a number of the questions here presented were there decided adversely to the contentions of the plaintiff landowners. The county clerk testified that the various records here under review were made up just as they had been for many years past in that county. We will not, therefore, discuss any of the objections to the sale there reviewed, but will confine our decision to such other points as appear of sufficient importance to require discussion.

It is first insisted that there "Was no proper warrant issued by the county clerk for the collection of the 1926 taxes in 1927, as required by § 10016, Crawford & Moses' Digest." A warrant was issued by the clerk to the collector of taxes, which the collector pasted on the front page of the real estate tax book. Its first sentence reads as follows: "Greetings: You are commanded to collect on each and every lot and tract of land named in this book * * * for the year 1926 as follows:". The objection to the warrant is that it directs the collection of taxes upon real estate alone.

The answer to this objection is that this record contains only the taxes on real estate, and the warrant authorized the collection of such taxes. It was not alleged or shown, and does not appear to be contended, that a similar warrant was not issued for the collection of the personal and poll taxes and entered upon the personal tax book. No doubt a warrant for the collection of such

taxes appeared in the tax book upon which they were extended. The direction to the county clerk, contained in § 10016, Crawford & Moses' Digest, is to "make out and deliver the tax books of his county to the collector, with his warrant thereunto attached," and it was not shown that the collector was attempting to collect taxes without authority. Certain it is that the collector had a warrant for the collection of taxes upon the real estate; and it is also certain that no attempt was made to collect upon the real estate the taxes due on personal property. There was no failure to comply with the law in this respect.

It is insisted that the sale was void because of an insufficient description of the land sold. No objection is offered to the description of the smaller tract, which is described as the northeast quarter of the southeast quarter, section 4, township 20 south, range 18 west, 40 acres. It is insisted that the description of the larger tract as the southwest quarter, section 3, township 20 south, range 18 west, 112.28 acres, is void for indefiniteness. The objection is that a quarter-section, according to the Government land survey, usually contains 160 acres, and that it cannot be known, from the description employed, what portion thereof was assessed and sold under the description set out above.

It may be first said, in answer to this objection, that the above descriptions are identical with those appearing in the patent to the ancestor of the plaintiffs, except that the land in section 3 was there described as southwest fractional quarter and the acreage is identical in each case.

It may be further said that the north boundary line of the state of Louisiana is the 33rd parallel of north latitude, which is made the south boundary line of this state by our Constitution. In other words, the southern boundary of Union county is the north boundary line of the state of Louisiana, which is the 33rd parallel of north latitude. The land surveys were not made with reference to this parallel, which results in many sections of land along the southern boundary of the state being made fractional, by reason of the north portion of the

sections being in this state and the south portion in the state of Louisiana. As to the portions in Louisiana the lands are nonexistent, so far as the right and power to tax by any agency of this state is concerned. These land surveys and the description thereof must be read solely with reference to the lands lying and being in this state. Section 3, township 20 south, range 18 west, is one of the many sections of land on our south boundary through which the dividing line runs between Arkansas and Louisiana. An inspection of the original plats and of the government survey in the state land office, which makes our constructive knowledge actual, shows that, as to the survey of so much of the southwest quarter of section 3 as lies in this state, the east half thereof contains 55.62 acres, and the west half 56.66 acres. These halves, added together to make the whole, give a total acreage of 112.28 acres, which was the exact acreage assessed for taxes and sold for the nonpayment thereof.

The descriptions employed in all the records of Union county offered in evidence relating to the assessment and sale of this quarter-section describe it as ''SW quarter section 3,'' which is a sufficient and certain description of all that quarter-section lying and being in this state. It would have added nothing to this description had it read: ''All that part of SW quarter section 3 lying and being in this state,'' because no other part thereof was or could be assessed for taxes in this state. The description was not too comprehensive, and therefore void, because it could be read only as applying to lands in this state, and, when so read, it includes the exact acreage in this state.

It would have added nothing to the description had the land been described as ''fractional SW quarter.'' That description would also have been sufficient under the authority of the case of *Bartel* v. *Ingram,* 178 Ark. 699, 11 S. W. (2d) 488, in which case a headnote reads as follows: ''A tax deed to 'fractional SW$\frac{1}{4}$ of SW$\frac{1}{4}$, section 19, twp. 17, range 15—26 acres,' * * * *held* not void, since the grantee would take the whole of the fractional call.''

The description, SW, and the description, fractional SW, would each cover the whole of the call, and either would be sufficient. It was said in the case of *Rucker* v. *Arkansas Land & Timber Co.*, 128 Ark. 180, 194 S. W. 21, that "A description used on tax books, like a description used elsewhere, has reference to government surveys and a mere specification of the section or subdivision thereof is sufficient. If it is in fact a fractional section or subdivision, it is so indicated on the government survey, and it is unnecessary to use the word 'fractional' as a descriptive word, and, on the other hand, the improper use of the word, when the section is not fractional, does not invalidate the description. The fact that the acreage is stated incorrectly does not lessen the certainty of the description." In the instant case the acreage was not stated incorrectly, but area does not control the general description. *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299.

The objection is made to the failure of the county clerk to extend upon the tax books the amount of taxes to be collected for the various purposes for which the State and county levies were expressly imposed. We do not find any statute which requires this to be done. To impose this requirement would greatly increase the cost of making up a tax book, and would require a book of unwieldly size. We have before us a photostatic copy of the real estate tax book which for many years has been in use throughout the state. The law requires that the books be uniform and be approved by the Tax Commission. Section 9880, Crawford & Moses' Digest. The tracts of land are assessed in these books in the name of the supposed owners. The different sections of land are separated by a blank space left by the county clerk for that purpose. Opposite the first tract assessed in each section there are proper figures inserted in each space (which are not repeated as to other tracts in the same section), in the columns headed: Section, Township, Range, Road District, School District, Rate District School Taxes. But the law does not require a repetition of these figures, as no one would misunderstand what

was meant. Such is the effect of the holding in the case of *Evans* v. *Dumas Store, Inc., supra.*

There is filled in, however, the blanks opposite each tract of land giving its description and area the total state tax due at the rate of 8.7 mills, and the county tax at the rate of 8 mills, and the school tax at the appropriate rate, which, as to the lands here under consideration, was 12 mills, and then the sum total of these taxes. There was a column—which was not filled—for the city taxes; but these lands were not subject to a city tax. In addition to the column showing the assessed valuation there was another column showing the value as equalized, and still another column showing the value as fixed by the county court. These last two columns were left blank in the lines following the lands here involved; but there is no contention that the assessed values were changed, either by the equalization board or by the county court. There was another column for the grand total, which was unfilled, which was unnecessary to do, as there were no city taxes. The figure, 8 mills, appeared at the top of the column headed "County Taxes," but both the records of the quorum court and the warrant to collect the taxes issued by the clerk to the collector, which, as has been said, appears on the first page of the tax record, show a levy, for county general purposes, of 5 mills, and for road taxes of 3 mills, which items total 8 mills. There was no other space on the real estate tax book where these items could be extended. We conclude, therefore, that the taxes were properly extended.

The same objection was made to the record of lands returned delinquent and to the advertisement of the sale thereof. The record of the list of lands returned as delinquent in the case of *Sawyer* v. *Wilson*, 81 Ark. 319, 99 S. W. 389, did not show the amount of taxes for any particular purpose, but only the total amount of taxes for all purposes. That opinion is also decisive of certain other questions raised on this appeal which are not discussed for that reason. Judge BATTLE, speaking for the court, there said: "There is no law prohibiting the blending of all taxes in a delinquent list of lands as published for sale. This is immaterial, and cannot af-

fect the owner. The taxes and amount of each charged against the land can be readily ascertained by reference to the tax books."

An amendment to the complaint alleged that the sale was void for the reason that there was no certificate from the county board of education showing the levy of the school taxes for 1926. This allegation was apparently abandoned at the trial, at least no attempt was made to prove it. The quorum court levied the school taxes, which were certified by the clerk to the collector and as extended upon the tax book. It was held, however, in the case of *Board of Conference Claimants* v. *Phillips,* 187 Ark. 1113, 63 S. W. (2d) 988, (to quote a headnote in that case), that "Forfeiture of land for delinquent taxes will not be defeated on the ground that the quorum court's proceedings did not disclose that the result of a school election was certified by the county board of election, since the record of the proceedings of the quorum court would not show such result, which should be recorded in a 'special record book,' as required by Acts 1931, p. 534, § 4."

The statute clothes tax deeds (regular in form, as were the deeds here attacked) with the presumption of regularity in all matters relating to the levy of the taxes, which presumption continues until overcome by proof to the contrary. Section 10109, Crawford & Moses' Digest.

It is insisted, upon the authority of the case of *Shultz* v. *Carroll,* 157 Ark. 208, 248 S. W. 261, that the sale is void, because the record of the levying court did not show the rate of taxes levied for the various school districts in the county. The record in that case did not profess to show the "rate" of taxes levied for school purposes, but rather the "amount" thereof, and did not show whether that amount meant "mills" or something else. That defect does not appear in the quorum court record before us, which recites in its caption "Levy of Taxes for Various School Districts, Sundry Mills Levied," and then tabulates the "rate" for which the tax was levied for the different school purposes, and recites the total levy for school district No. 7, in which the lands here involved are situated, to be 12 mills, which, according

to the tax records, was the rate extended against said lands and was the rate which the warrant from the clerk to the collector declared should be collected.

It is finally objected that the sale is void because the clerk copied on the record of the list and notice of delinquent lands sold the proof of publication of the list of delinquent lands, the affidavit of the publisher of the newspaper in which the advertisement appeared, and that this affidavit was made by the business manager of the newspaper, a person not authorized by law to make the affidavit. It is not questioned that the clerk properly recorded said "List and Notice," as required by §§ 10084, and 10085, Crawford & Moses' Digest, in the record provided by law for that purpose, and had certified, at the foot of said record, the newspaper in which said list was published and the dates of publication and for what length of time same was published before the second Monday in June then next ensuing. Section 10085, Crawford & Moses' Digest, provides that "Such record, so certified, shall be evidence of the facts in said list and certificate contained." It is not questioned that the certificate of the clerk appearing in the list and notice record conforms to this statute. The objection appears to be that the affidavit showing publication which the law does not appear to require to be entered upon the record was not made by a person authorized by law to make the affidavit. Counsel for appellant say there is no statute requiring that the affidavit making proof of the publication of the delinquent list be entered of record; and counsel for appellee have not cited us to any statute containing that requirement; and we have found none.

The clerk's certificate is in proper form, and in the case of *Hurst* v. *Munson*, 152 Ark. 313, 238 S. W. 42, it was said: "This court has decided that the certificate required by the statute cited above must be placed of record prior to the day of sale, otherwise the sale is invalid. (Citing cases.) We have also held that the clerk's certificate thus recorded is the sole evidence of the publication of the list. *Hunt* v. *Gardner*, 74 Ark. 583, 86 S. W. 426; *Cook* v. *Ziff Colored Masonic Lodge*, 80 Ark.

31, 96 S. W. 618. The record being the sole evidence, the facts cannot be proved by evidence *aliunde.*"

The certificate of the county clerk in that case was held insufficient and the tax sale bad for that reason, not because the clerk's certificate had been or could be contradicted by evidence *aliunde,* but because the certificate showed upon its own face that it had not been spread of record before the sale, as the certificate recited had been done. If we may look only to the clerk's certificate to determine the question of publication of the delinquent list, as *Hurst* v. *Munson, supra,* decides, then we have the evidence of publication conforming to the requirements of the law.

We conclude, upon a consideration of the whole case, that the court below was in error in holding the tax sale and the deed made pursuant thereto void, and that decree will be reversed, and the cause will be remanded with directions to dismiss appellees' complaint in which cancellation of the deeds was prayed.