ROBERT L. HARRISON *v.* LINDELL R. COLLINS ET AL

5-4940                                    444 S. W. 2d 861

Opinion delivered September 22, 1969

[Rehearing denied October 20, 1969]

*Reed & Blackburn,* for appellant.

*Lightle & Tedder,* for appellees and cross-appellants.

FRANK HOLT, Justice. This is a title dispute to twenty acres of an "oversized forty"-acre tract of land. Appellant claims title by a tax deed and payment of taxes thereon. Appellee Collins asserts title through a warranty deed and adverse possession. Appellee National

Old Line Insurance Company is Collins' mortgagee. The chancellor refused to quiet and confirm title in either the appellant or appellee Collins.

For reversal both appellant and cross-appellant Collins contend that the chancellor erred in denying their respective claims of title to the land. We agree with the cross-appellant that the title should be vested in him.

Appellant claims ownership of the land based upon the assertion that the land is unimproved and unenclosed and that he and his predecessor in title have paid taxes thereon for more than seven years under the color of title of a tax deed pursuant to Ark. Stat. Ann. § 37-102 (Repl. 1962). The bases of his claim appear undisputed other than the lands being unenclosed. There is no attack upon the validity of the tax deed. On the other hand, the appellee and cross-appellant, Collins, claims ownership as the successor in title to a 1944 warranty deed and by adverse possession. Appellant argues that the warranty deed upon which Collins relies is defective and that any tax payments made upon the property are based upon an invalid description of the property on the tax books. Even though we should agree with appellant, we think that Collins has acquired title to the property by adverse possession for more than the seven years as is required by § 37-101. A claim of title to property based upon a deed and payment of taxes is subservient to the claim of one who holds possession adversely for the statutory period. *Hargis* v. *Lawrence,* 135 Ark. 321, 204 S. W. 755 (1918).

There was evidence by Collins and other witnesses that since 1944, the date of the warranty deed conveying this property to appellee's father who is his predecessor in title, both father and son have continuously exercised adverse acts of ownership to this property. The property was mortgaged several times. For more than twenty years an "island," including the land in

question, was known and considered by the residents of that vicinity as a part of the Collins farm. Collins owns the adjacent lands on the north, south and west of the land in question. On the east side of the "island," it appears undisputed that during this time the Collinses and an adjoining landowner maintained a joint fence for their common benefit. This fence was on the property of the adjacent landowner and separated his property from the twenty acres in question. The disputed land lies east of a horseshoe bend or "island" caused by the Little Red River. According to appellee's evidence the disputed property was surrounded by the joint fence on the east and by appellee's other property on the south, west and north. The "island" property, including the twenty acres in dispute, has been used by appellee and his father for pasturing cattle each year since the property was acquired in 1944. Whenever high water damaged or destroyed the fence, it was rebuilt by appellee and his adjoining landowner to contain their cattle. Appellee Collins conveyed timber cutting rights which precipitated this action.

When possession of property is so conspicuous that it is generally known and talked of by the public or people in the neighborhood, such possession is said to be notorious. *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489 (1937). In *Berry* v. *Cato,* 220 Ark. 36, 245 S. W. 2d 824 (1952), we said:

> "* * * It must be such as would give notice to the general public of the claimant's intention to hold adversely. These elements indicating possession must clearly appear where, as here, the land is not inclosed and tax payments are not shown."

Adverse possession ripens into ownership when there are seven years of open, actual, notorious, continuous and hostile possession with the intent to hold adversely and in derogation of another. *Staggs* v. *Story,* 220 Ark. 823, 250 S. W. 2d 125 (1952); *Dierks Lbr. &*

*Coal Co.* v. *M. H. Vaughn* & *J. A. Barnett,* 131 F. Supp. 219 (Ark. 1954). In our view, in the case at bar, there was sufficient actual, open and notorious possession of the land in question to vest title in Collins. In *Black* v. *Clary,* 235 Ark. 1001, 363 S. W. 2d 528 (1963), we said:

> "Notice of adverse possession may be actual or it may be inferred from facts and circumstances, such as grazing cattle, erection of a fence or improving the land."

We hold that a preponderance of the evidence in the case at bar, upon a trial *de novo,* establishes title to the property in Collins by his meeting the requirements of adverse possession for more than the statutory seven years. Affirmed on direct appeal; reversed on cross-appeal.

FOGLEMAN and BROWN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I must respectfully dissent because I am convinced that the majority has overlooked matters which should be determinative on this appeal. In the first place, the source of appellant's title has been treated rather lightly. In the second place, the fact that the chancellor found that appellees had failed to sustain their claim of adverse possession is given no significance. In ignoring this finding, the majority has also disregarded the rule that the findings of the chancellor on disputed questions of fact will not be disturbed unless they are clearly against the preponderance of the evidence. It seems to me that the findings of the chancellor are supported by the evidence. Although the chancellor refused to confirm title in either party, both argue here that title should be confirmed in either appellant Harrison or appellee Lindell R. Collins. I submit the title should be confirmed in Harrison.

This action was instituted May 19, 1967, by appel-

lant's petition to acquire title. The action was brought against J. T. Gilliam, T. O. Collins and Mrs. T. O. Collins. On June 8, 1967, Lindell R. Collins, who claimed by deed from T. O. Collins, filed an intervention. In this intervention, Collins alleged that, either in person or by his predecessors in title, he had at all times during the past twenty years been in open, adverse and notorious possession of all the lands involved. Trial was had on March 21, 1968. The chancellor found that appellant had failed by a preponderance of the evidence to prove that he was the lawful owner of the lands involved and that the intervenor, Lindell Collins, had failed by a preponderance of the evidence to prove that he was the lawful owner and entitled to possession of the lands. Thus the claim of adverse possession was found to be without the required evidentiary support.

It was stipulated that the common source of title to the property was A. L. Hilger, who obtained title to the lands by deed dated December 5, 1901. The disputed tract consisted of 20 acres out of the Northwest corner of the Southwest quarter of Section 4 in Township 9 North, Range 8 West in Cleburne County, Arkansas. The tract was described by a proper metes and bounds description in all of the proceedings. The respective chains of title prior to 1958 are of little consequence. The quarter-quarter section out of which this tract is claimed consisted of 44.09 acres, being what is commonly called an "oversized forty." Throughout the years relevant to this controversy, there appeared upon the county tax books a tract described as the fractional Northwest quarter of the Southwest quarter of the Section. The acreage given on the tax books was 20 acres.[1] This tract was sold at the collector's tax sale to A. L. Clark on November 14, 1955, for taxes delinquent for 1954. In due course, the clerk's deed to A. L. Clark for these lands was issued on April 4, 1958. The deed was

[1] The tax books also carried a description of "Pt NW¼ SW¼" in the same section with area indicated as 25 acres, on which the Collinses had paid taxes. This description was void for indefiniteness. *Clem* v. *Missouri Pac. R. Co.,* 223 Ark. 887, 269 S. W. 2d 306.

filed for record on the same date. The validity of this deed is not questioned in this proceeding. Of course, this description carried all of the Northwest quarter of the Southwest quarter of the Section. *Alphin* v. *Banks,* 193 Ark. 563, 102 S. W. 2d 558; *Bartel* v. *Ingram,* 178 Ark. 699, 11 S. W. 2d 488. In this situation the acreage designation was surplusage merely and did not control the land description and the deed. *Turner* v. *Rice,* 178 Ark. 300, 10 S. W. 2d 885; *Alphin* v. *Banks, supra.* This tax deed carried all the interests of all of the predecessors in title of both parties as of the date of the deed. *Osceola Land Company* v. *Chicago Mill & Lbr. Co.,* 84 Ark. 1, 103 S. W. 609. Clark conveyed the 20-acre tract claimed by appellant to Billy Boles Land Investment Co., Inc., with other lands, by deed dated December 31, 1962. Billy Boles Land Investment Co., Inc., conveyed the tract to Buel E. Hensley on October 27, 1966. Hensley conveyed it to Harrison on October 29, 1966. Thus appellant had a perfect record title. *Wimberly* v. *Norman,* 221 Ark. 319, 253 S. W. 2d 222. He was entitled to have his title quieted as against appellees, unless he was barred by the seven-year adverse possession statute. Clark, appellant's predecessor in title, first became entitled to possession on the date of his clerk's tax deed.[2] The statutory bar then must have elapsed after April 4, 1958. The possession of Collins and his predecessors in title must have been actual and continuous for seven years or more after the date of this deed.

Appellee testified that he acquired the property from his father, T. O. Collins, in 1961. He did not testify as to any acts of possession by him or his predecessor. He simply stated that he acquired the property, gave mortgages on it and sold timber to Mr. Gilliam. The selling of the timber provoked this litigation.

---

[2]Upon sale, the purchaser only became entitled to a certificate of purchase. Ark. Stat. Ann. § 84-1114 (Supp. 1967). The land was subject to redemption from the sale for a period of two years. Ark. Stat. Ann. § 84-1201 (Supp. 1967). Thereafter, the purchaser became entitled to a deed which conveyed title. Ark. Stat. Ann. § 84-1302 (Repl. 1960).

Mr. T. O. Collins did not know where the lines of the property were because, as he said, "he didn't care that much about it." On direct examination he was asked what he used this island for. His response was:

"Oh, we would just pasture cattle up until I guess in '62 or '63 when I deeded this place to my son. We didn't farm that down there the last eight or ten years; we would just pasture it; we had it in fescue and the cattle would go in there and water and lay in the shades. There wasn't no enormous amount of grass grown, but we did graze it, and the cattle stayed on the Island there."

This witness further testified that the cattle would go over on this property in the summertime where there was shade and where they could wade in and out of the water. He said that this particular tract was not cleared and had never been farmed and that the possession consisted of pasturing cattle over there for about 25 years. While he indicated that there was not any year since he acquired the property that his cattle had not been on the land on the bend, it is not clear that he was referring to the land involved in this litigation, because he added that the land of which he was speaking at that time had been farmed the last four or five years in soybeans and not pastured in the summertime. It was, he said, used for pasture after the crops were gathered.

Linus Lewis, a witness called by appellees, gave the following testimony on the possession of the property:

"Q. Do you know to what extent Mr. Collins has used that land and how he has used it?

A. Well, he let his cattle run on it.

Q. Is it fit for pasture?

A. Not too much pasture ground; but, when the

river is down, the cattle would come across over on it. Once in a while, they get across the fence and come on down on me.''

On cross-examination the witness said that he had been on the tract six or eight times since 1923. He supposed that his visits would be years apart. Lewis stated that the Collins cattle got across the fence onto his land on occasion. His cattle also got over onto this tract on occasion when the fence was down. His land had been in the soil bank for eight years and he had little occasion to go there during the last ten years.

Arch Hayes testified that he had worked for T. O. Collins and Son since 1942. He worked on the place claimed by the Collinses each year until the crops were laid by. He stated that the Collinses used this land for pasture over the past 20 years. According to him the cattle could go over on this property in the summertime. He admitted that the cattle would stay off the island for some weeks at a time when the river was up in the winter.

The testimony of Woodrow Williams, also called by appellees, relates to a period from 1956 to 1960. While he endeavored to state that there was an enclosure of the land during that period, he admitted that he did not know how far north the fence on the east side ran. It is not possible to determine whether he was talking about the same fence as that Houston Butler had testified about.

Houston Butler had stated that the fence was constructed on his property and had been up and down spasmodically since the year that he built it. He located the fence as running along a riverbank somewhere between 200 and 500 feet west of the boundary between the lands claimed by the Collinses and his own land. He stated that both his cattle and that of Collins freely roamed back and forth when the river was low. Accord-

ing to him the fence was repaired when one owner's cattle would cross into the crops of the other.

Even though the Collinses owned land on three sides of the disputed tract, there was no other testimony to establish an enclosure of this tract or a larger area including it. In this state, the pasturing of cattle on land without substantial enclosures or other permanent improvements is not sufficient to support a plea of limitations, especially where the livestock of others is not excluded from the land or where a part of the enclosure is on the land of others. *Nall* v. *Phillips,* 213 Ark. 92, 210 S. W. 2d 806; *Dowdle* v. *Wheeler,* 76 Ark. 529, 89 S. W. 1002.[3]

Since the testimony shows that livestock of others was not excluded and that the fence claimed to constitute a part of an enclosure was on Houston Butler's land, I do not see how we can say that the chancellor's holding on appellees' claim was against the preponderance of the evidence. Since the validity of the tax deed is not attacked, I would reverse on appeal and affirm on cross-appeal and direct the quieting of title in Harrison as against appellees.

BROWN, J., joins in this dissent.

---

[3]See also *Dierks Lumber & Coal Co.* v. *Carroll,* 223 Ark. 424, 266 S. W. 2d 294, where the chancellor's holding that there was adverse possession was reversed, even though there was no doubt that appellees had used the acreage for pasturage.